This is an action by a landlord, Mr. Esneault, against his tenant, Southern Security Services, for rent due under a written lease of office space to the tenant for a term of three years commencing on November 1, 1980. The lease contained a covenant on behalf of the landlord that the tenant would have the right to quiet and peaceful enjoyment of the premises throughout the term of the lease, without hindrances, molestation or interruption by the landlord or any person claiming through him.
The tenant's primary defenses were (1) that the tenant vacated the premises due to the landlord's breach of a subsequent oral agreement of the parties not to rent to Sizemore Security (Sizemore), a competitor of the tenant, and (2) that the tenant notified the landlord that any lease to Sizemore of office space immediately above the premises rented to the tenant would breach the landlord's covenant of quiet enjoyment but that the landlord breached that covenant by renting the same to Sizemore.
The landlord filed a motion for a summary judgment and affidavits were presented by both sides relative thereto. The trial court rendered a monetary summary judgment in favor of the landlord and against the tenant after first finding that there was no evidence that the landlord breached the lease by renting to Sizemore and that no constructive eviction of the tenant had been shown. The tenant duly appealed. The facts pertaining to raised issues as developed by the affidavits follow herein.
The landlord's affidavit is not disputed when he swore that at no time during the lease negotiations with the tenant did the parties contemplate inclusion of a noncompetition clause in the lease for such was never discussed. Herbert Fields, a former branch manager for the tenant, also swore to substantially the same facts.
The lease did not contain a clause prohibiting the leasing of available rental space by the landlord to competitors of the tenant.
The tenant offered the affidavit of Steve Almy as follows:
 "My name is Steve Almy. I am Regional Manager for Southern Security Services, Inc. in Atlanta, Georgia. In late September, 1981 I received a telephone call from Richard N. Esneault in Huntsville, Alabama who at that time was the landlord of the office rented by *Page 1311 
Southern Security Services, Inc. in Huntsville.
 "Mr. Esneault told me that Herb Fields, a former employee of Southern Security Services, Inc. who had left to manage a competitive security service named Sizemore Security, wanted to rent the office space directly above Southern Security Service, Inc. offices for use as Sizemore's Huntsville office. Mr. Esneault asked if Southern had any objections to that. I told him that we were very opposed to it because of pending legal action with Herb Fields and because Fields and Sizemore Security were actively engaged in soliciting Southern's active accounts. We felt that Sizemore's presence in our office building would give them an undue advantage in direct contact with our clients and employees.
 "Fields, after leaving Southern and going to work for Sizemore despite a noncompetition agreement he had with Southern, had actively recruited Southern employees including myself, to work for Sizemore. We felt that his presence in the office immediately above Southern's office would give him access to constant knowledge of Southern's employees and contacts with Southern's clients that would not be tolerable.
 "Because of Fields' prior employment with Southern and his extensive knowledge of our client and employee files we felt that such proximity of Sizemore's office under Fields' management to Southern's office would enhance the competitive advantage already gained by Sizemore's employment of Fields to a very unfair level.
 "I told Mr. Esneault Of this situation in late September during his telephone call to me and he indicated to me that he would not lease the office to Sizemore. The next day he called and reversed himself and told me that he was going to rent to Sizemore.
 "Within a couple of days David Hicks, General Manager of Southern Security Services, Inc., wrote the attached letter to Mr. Esneault, confirming that Southern considered the proposed lease to Sizemore to be a breach of our right of quiet enjoyment of the premises. That letter was hand delivered on October 6, 1981.
 "Subsequently, Joe Dych, general counsel for Southern Security Services, Inc., sent Mr. Esneault the attached letter concerning this breach of quiet enjoyment and informed him that due to that breach Southern considered their lease with Esneault to have been breached and would vacate the premises prior to December 1, 1981."
The other counter-affidavit filed by the tenant was as follows:
 "My name is Bill Cantrell. I am Branch Manager for Southern Security Services in Huntsville, Alabama. In mid-September, 1981 our landlord, Mr. Richard Esneault, came to me and said that Sizemore Security wanted to rent the office directly above Southern's office. He told me that he was pleased with the way Southern had kept up and improved the office we rented and that he didn't think it would be right to rent to them. He indicated at that time that he would not rent to Sizemore.
 "Sometime later Mr. Esneault came to me and told me that he had decided to go ahead and rent to Sizemore."
We must look to the above evidence to ascertain if genuine issues of material fact existed, for, if there was a scintilla of evidence which supported the tenant's position, a summary judgment was not appropriate. Rule 56 (c), A.R.Civ.P.; Gross v.Republic Steel Corp., 400 So.2d 383 (Ala. 1981).
The tenant contends that the above affidavits of Almy and Cantrell constitute proof of the existence and breach of an oral agreement of the parties whereby the landlord would not lease any office space to Sizemore. Both affidavits merely state that the landlord indicated that he would not rent to Sizemore, but that does not constitute evidence that the landlord and tenant actually reached a binding contract to that effect which was supported by a valuable consideration. "Unilateral grumbling cannot modify a bilateral contract." *Page 1312 Kinmon v. J.P. King Auction Co., Inc., 290 Ala. 323,276 So.2d 569 (1973). We find not a scintilla of evidence of the existence of an oral agreement as contended by the tenant.
Another issue concerns whether the landlord's leasing of office space to the tenant's competition so interfered with the tenant's beneficial use and quiet enjoyment of the premises as to constitute a constructive eviction of the defendant from the premises.
The two Alabama cases which were cited by the tenant are clearly distinguishable from the instant case. The decision inSenteney v. United Embroidery Co., 230 Ala. 53, 159 So. 252
(1935), differs because the supreme court expressly and at length based that decision upon an express provision in the lease whereby the landlords agreed, but subsequently breached that promise, that the landlords would continue to occupy their part of the building. As previously noted, the lease contract between these parties did not contain an agreement whereby the landlord was foreclosed from renting available office space to the tenant's competition. The other case, Wyatt v. Adair,215 Ala. 363, 110 So. 801 (1926), was based upon a custom, which was founded upon racial practices and discriminations of the day, a violation of the custom being, at that time, reprehensible in the eyes of the supreme court. Neither a custom nor a nuisance created by the landlord is here involved.
In Paterson v. Bridges, 16 Ala. App. 54, 75 So. 260 (1917), the landlord sued the tenant for rent. In his second plea, the tenant defended upon the ground that, after he and his mother moved into the rented apartment, the landlord permitted others to occupy other rooms in the building who behaved so disorderly that the tenant and his mother could neither sleep nor rest in peace. On that account, the tenant averred that he was compelled to move since he was not given the quiet and peaceable enjoyment which the law assured him. Therein, it was decided as follows:
 "If the tenant suffers total eviction, actual or constructive, he may plead this in bar of the landlord's claim for subsequently accruing rent. Tiffany's Landlord and Tenant, p. 1221; Abrams v. Watson, 59 Ala. 524; Warren v. Wagner, 75 Ala. 188, 51 Am.Rep. 446.
 "The question here presented is whether the act averred in the second plea constitutes, as a matter of law, a constructive eviction; and while the authorities are not uniform, the weight of authority seems to establish the doctrine that, to constitute a constructive eviction, resulting from the interference with the right of the tenant to quiet enjoyment, by the landlord, not resulting in actual dispossession, it is necessary that the conduct of the landlord manifest an intention to deprive the tenant of possession of the rented premises. The intent need not be actual, but may be presumptive, or inferable from the character of the landlord's interference. Warren v. Wagner, supra; Tiffany's Landlord Tenant, § 185, p. 1258; Skally v. Shute, 132 Mass. 367.
 "A constructive eviction cannot be predicated on the acts of conduct of a third party, unless such third party is acting under the landlord's authority, express or implied. Warren v. Wagner, supra. (Remaining citations omitted.)
 "The landlord of an apartment house, who lets it for a dwelling place to tenants, is not responsible for the conduct of other tenants acting within their rights in their own apartments; but if the conduct of the other renters is unlawful, and amounts to a nuisance, and such nuisance is established or maintained with the consent and connivance of the landlord, and as a consequence other tenants' rights are materially disturbed and interfered with, he has a right to quit the premises and treat it as a constructive eviction. (Citations omitted.)
 "The averments of the second plea do not bring the case within these principles, and the court erred in overruling the demurrers."
Paterson v. Bridges, supra.
While the facts in Paterson are clearly different from those presently presented, the law therein stated is applicable. *Page 1313 
Hence, we do not find any evidence of a constructive eviction. The tenant could have insisted upon an appropriate clause in its lease which would have precluded the landlord from renting space in the same office building to any competitor of the tenant. In the absence of such a lease provision, the renting of office space in the same building to a tenant's competitor, whose operation does not constitute a nuisance and who is engaged in a legitimate business, does not constitute a breach of a covenant of quiet enjoyment.
Thus, we find that no genuine issue of fact existed and that the learned trial court properly granted the summary judgment in favor of the landlord. However, the parties are in agreement that the trial court erred in calculating the amount of rent due and the interest thereon. In his brief, the landlord states that he is willing to file a remittitur to the amount computed by the tenant, which appears to be the correct amount. Accordingly, a judgment will be entered that, unless the landlord files a remittitur with the clerk of this court within fourteen days reducing the total judgment to the sum of $5,401.85, the judgment of the trial court shall stand reversed and the case shall be remanded to the circuit court. Said sum is composed of $5,176.50 for rent, plus six percent (6%) interest on each rent installment from the date each became due until the date of the circuit court's judgment, which interest totals $225.35. If, however, such remittitur is filed, a judgment for $5,401.85 shall stand affirmed. TravelersIndemnity Co. v. Capitol City Haulers, 393 So.2d 1012
(Ala.Civ.App. 1980). If the judgment so stands affirmed, it shall draw interest from February 22, 1983, the date of the entry of the circuit court's judgment, at the rate of twelve percent (12%) per year. § 8-8-10, Code 1975; § 12-22-71, Code 1975; Montgomery Light Water Power Co. v. Thombs, 204 Ala. 678,685, 87 So. 205, 211 (1920).
The foregoing opinion was prepared by Retired Circuit Judge EDWARD N. SCRUGGS while serving on active duty status as a judge of this court under the provisions of § 12-18-10 (e) of the Code of Alabama of 1975 and this opinion is hereby adopted as that of the court.
AFFIRMED CONDITIONALLY.
WRIGHT, P.J., and BRADLEY, J., concur.
HOLMES, J., concurs in result.