The Alabama Department of Transportation ("ALDOT") appeals from a judgment of the Mobile Circuit Court awarding Donald Frank Williams and James G. Harrell, Jr. ("the landowners"), interest of $47,313.92 on a judgment in an eminent domain case. We reverse and remand.
 I. Facts and Procedural History
At some time before 2004, ALDOT began eminent domain proceedings to acquire from the landowners certain real property in Mobile County for a right-of-way project. ALDOT offered the landowners $137,400 in compensation; they rejected that offer. On January 14, 2004, ALDOT filed a condemnation action in the Mobile Probate Court to obtain the property. The probate court determined compensatory damages for the property to be $352,346. Both ALDOT and the landowners appealed to the Mobile Circuit Court. ALDOT deposited the amount of the probate court's judgment into the circuit court. The landowners withdrew $137,400 (the amount of ALDOT's original offer for the property); $214,946 remained on deposit with the circuit court. On July 14, 2004, ALDOT obtained the right to possess the property and began construction activity shortly thereafter. The case proceeded to a jury trial in the Mobile Circuit Court. On May 18, 2005, the jury entered a verdict that determined compensatory damages for the property to be $483,000. On June 3, 2005, the circuit court calculated prejudgment interest due on the compensatory damages to be $28,746.35, and entered a judgment of condemnation in favor of ALDOT, with a compensation award of $511,746.35 to the landowners (damages of $483,000 plus prejudgment interest of $28,746.35).
ALDOT appealed the circuit court's judgment to this Court, depositing an additional $159,400.35 into the circuit court for a total principal amount of $374,346.35 on deposit in the circuit court. On July 14, 2006, this Court affirmed the circuit court's judgment, without an opinion. Alabama Dep't ofTransp. v. Williams (No. 1041564, July 14, 2006), ___ So.2d ___ (Ala. 2006) (table). On October 19, 2006, the Mobile circuit clerk paid the landowners $389,060.69, representing $374,346 in principal[1] (the difference between the circuit court's judgment of $511,746.35 and ALDOT's original offer of $137,400), plus $14,714.69 in accumulated interest actually earned on the funds, which had been deposited in an interest-bearing account.
The landowners then sought post-judgment interest on the circuit court's judgment entered on June 3, 2005, in the amount of $511,746.35, reduced by the amount of the previous disbursement to the landowners in the probate court of $137,400 (hereinafter "the principal amount"). The landowners contended that they were entitled to postjudgment interest at a rate of 12% of the principal amount calculated pursuant to §§ 8-8-10
and 18-1A-30, Ala. Code 1975. ALDOT did not oppose an award of postjudgment interest, *Page 1094 
but argued that the proper interest rate on the principal amount should be that provided in § 18-1A-211(a), Ala. Code 1975.
Section 18-1A-211 states:
 "(a) Except as provided in subsection (b), the judgment shall include interest at a rate equal to the most recent weekly average one-year constant maturity yield, as published by the Board of Governors of the Federal Reserve System, upon the unpaid portion of the compensation awarded. The interest shall commence to accrue on the date of entry of the judgment.
 "(b) Except as provided by Section 18-1A-111, the judgment may not include any interest upon the amount represented by funds deposited into probate court by the plaintiff for the period after the date of deposit."
ALDOT provided documentation to the circuit court indicating that on June 3, 2005, the date of the judgment, the applicable interest rate determined pursuant to § 18-1A-211(a) was 3.28%.
Both ALDOT and the landowners treated the interest due as subject to an offset in the amount of $14,714.69, the amount of interest earned on the additional money ALDOT had deposited into the circuit court after the entry of the circuit court's judgment that was due and payable to the landowners at the conclusion of the proceedings. Under the landowners' calculation based on a rate of 12%, the net interest due is $47,313.92. Under ALDOT's calculation based on a rate of 3.28%, the net interest due is $2,239.87. The circuit court accepted the landowners' calculation of postjudgment interest and entered a judgment in favor of the landowners for $47,313.92. ALDOT appealed.
 II. Standard of Review
Because the issue presented by this appeal concerns only questions of law involving statutory construction, our review is de novo. Whitehurst v. Baker, 959 So.2d 69 (Ala. 2006). See also Taylor v. Cox, 710 So.2d 406 (Ala. 1998).
 III. Jurisdiction
We first address the landowners' contention that this Court does not have jurisdiction to decide this appeal. In the statement of jurisdiction in their brief to this Court, without any further discussion or citation to any authority, the landowners state:
 "This Court does not have subject-matter jurisdiction because the amount involved, exclusive of interest and costs, does not exceed $10,000. Ala. Code, § 18-1A-288."
Section 18-1A-288, entitled "Appeal from final judgment of circuit court," provides:
 "After entry of final judgment in the circuit court, any party may, within 42 days thereafter, upon giving bond or security for costs as in other cases, file a notice of appeal to the court of civil appeals where the amount involved, exclusive of interest and costs, does not exceed $10,000.00. Where the amount involved, exclusive of interest and costs, exceeds $10,000.00, such appeal shall be to the supreme court."
(Emphasis added.)
In its response to the landowners' contention that this Court lacks jurisdiction over this appeal because the amount in controversy does not exceed $10,000, ALDOT argues only that the statutory language requires that appellate jurisdiction in eminent domain cases be determined by the amount of compensation awarded for the taking. Because the taking here resulted in an award of $483,000 before interest *Page 1095 
is added, a sum well in excess of $10,000, ALDOT contends that this Court, and not the Court of Civil Appeals, has appellate jurisdiction over this case.
We need not decide whether appellate jurisdiction over this case must be determined by the amount of interest in controversy or by the amount of the compensation awarded the landowners in the original judgment. Upon reviewing the parties' contentions, it becomes readily apparent that this Court has jurisdiction over this appeal. The landowners contend that the postjudgment-interest award should be $47,313.92. ALDOT contends that the postjudgment-interest award should be $2,239.87. Because the total postjudgment-interest calculation from the landowners' perspective exceeds $10,000, this case is properly within the jurisdiction of this Court. That our rejection of the landowners' contention would result in an award of less than $10,000 does not oust this Court of jurisdiction to decide the merits of the issue before us. See Harper v.Regency Dev. Co., 399 So.2d 248, 260-61 (Ala. 1981). Thus, whether appellate jurisdiction is determined by the amount of interest in controversy or by the original judgment that determined the amount of compensation to be awarded to the landowners, this Court has appellate jurisdiction of this case.
 IV. Rate of Postjudgment Interest
ALDOT argues that the circuit court should have calculated postjudgment interest in this eminent domain case pursuant to § 18-1A-211. The landowners argue that the circuit court properly calculated postjudgment interest at 12% pursuant to § 8-8-10, which provides generally for postjudgment interest, [2] and § 18-1A-30(b), which provides for interest to be paid on funds deposited into court when an eminent domain case is appealed to the circuit court from the probate court.[3]
This Court discussed the history of § 18-1A-211 inWilliams v. Alabama Power Co., 730 So.2d 172 (Ala. 1999):
 "Before the enactment of § 18-1A-211, Alabama did not have a statute providing for the calculation of prejudgment interest in delayed-payment condemnation cases. However, in 1985, Alabama joined a majority of states in adopting a uniform method of calculating prejudgment interest. See the commentary to § 18-1A-211, Ala. Code 1975. In its original form, § 18-lA-211(a) was a modified version of § 1202 of the Uniform Eminent Domain Code. It read as follows:
 "`(a) Except as provided in subsection (b), the judgment shall include interest at a rate equal to the rate allowed to be charged on money judgments as set forth in section 8-8-10 as amended at the date of the final order in the circuit court upon the unpaid portion of the compensation awarded. *Page 1096 
 The interest shall commence to accrue upon the date of valuation and be calculated to the earlier of the date of deposits into the probate court or date of entry of the judgment.'
"However, § 18-1A-211(a) was amended effective July 28, 1995. The amended § 18-1A-211(a) no longer addresses prejudgment interest. It reads, in pertinent part, as follows:
 "`(a) Except as provided in subsection (b), the judgment shall include interest at a rate equal to the annual interest rate prevailing on the 52-week United States Treasury Bills at the date of the final order in the circuit court upon the unpaid portion of the compensation awarded. The interest shall commence to accrue on the date of entry of the judgment.'
 "(Emphasis added [in Williams].) Although the commentary to § 18-1A-211 was not amended in 1995 and continues to discuss the award of prejudgment interest, the clear language of the amended § 18-1A-211(a) addresses only post-judgment interest."
730 So.2d at 175 (footnotes omitted). The Court noted inWilliams that Alabama did not have a postjudgment-interest section in its eminent domain statutes until the legislature amended § 18-1A-211 in 1995. In 2004, the legislature again amended § 18-1A-211(a) to substitute "most recent weekly average one-year constant maturity yield, as published by the Board of Governors of the Federal Reserve System," for "annual interest rate prevailing on 52-week United States Treasury Bills at the date of the final order in the circuit court." See also Samford Univ. v. City ofHomewood, 959 So.2d 64 (Ala. 2006). Thus, in its 1995 amendment, the legislature deleted from the statute governing postjudgment interest in eminent domain cases any reference to § 8-8-10, the statute generally addressing postjudgment interest. The 2004 amendment merely changed the source for determining the interest rate.
We agree with ALDOT that § 18-1A-211(a), rather than § 8-8-10 or § 18-1A-30(b), controls the rate of post-judgment interest in eminent domain cases. Even before the legislature enacted § 18-1A-211, this Court held that § 8-8-10 did not apply in an eminent domain case because "`a judgment and assessment of damages rendered in a condemnation proceeding is not a personal, moneyed judgment.'" State v. LeCroy,279 Ala. 428, 429, 186 So.2d 142, 143 (1966) (quotingSouthern Elec. Generating Co. v. Lance, 269 Ala. 25,34, 110 So.2d 627, 634 (1959)). Although we have found no previous case addressing § 18-1A-30(b), it is clear from the face of the statute that it does not apply to the calculation of postjudgment interest.
The landowners, in addition to urging us to embrace the circuit court's use of an interest rate of 12% of the principal amount pursuant to §§ 8-8-10 and 18-1A-30, Ala. Code 1975, further argue that the constitutional principle of just compensation requires that the postjudgment interest on their award be computed at a rate greater than the rate provided by the legislature in § 18-1A-211. They cite numerous cases holding that the United States and Alabama Constitutions guarantee just compensation to an owner whose property is taken pursuant to the power of eminent domain. In their brief to this Court, the landowners also make the following argument in connection with their contention that they are constitutionally entitled to an interest rate greater than the rate provided in § 18-1A-211(a):
 "There is no statute or procedural rule that can trump the Constitutional limitation on the State's exercise of the power of eminent domain. To the extent *Page 1097 
that the authority cited by the State holds otherwise, it must be overruled by this Court."
We do not dispute the principle that "just compensation" is required in eminent domain cases, but we do not read the cases cited as broadly as do the landowners. The Takings Clause of theFifth Amendment to the United States Constitution provides that "private property [shall not] be taken for public use without just compensation." In Seaboard Air Line Railway v.United States, 261 U.S. 299, 43 S.Ct. 354, 67 L.Ed. 664 (1923), reviewing a case in which the United States District Court had included prejudgment interest in a judgment in an eminent domain case, the United States Supreme Court held:
 "The compensation to which the owner is entitled is the full and perfect equivalent of the property taken. It rests on equitable principles and it means substantially that the owner shall be put in as good position pecuniarily as he would have been if his property had not been taken. He is entitled to the damages inflicted by the taking.
 ". . . .
 "It is obvious that the owner's right to just compensation cannot be made to depend upon state statutory provisions. . . . The rule above referred to, that in the absence of agreement to pay or statute allowing it the United States will not be held liable for interest on unpaid accounts and claims, does not apply here. The requirement that `just compensation' shall be paid is comprehensive and includes all elements and no specific command to include interest is necessary when interest or its equivalent is a part of such compensation. Where the United States condemns and takes possession of land before ascertaining or paying compensation, the owner is not limited to the value of the property at the time of the taking; he is entitled to such addition as will produce the full equivalent of that value paid contemporaneously with the taking. Interest at a proper rate is a good measure by which to ascertain the amount so to be added."
261 U.S. at 304-06, 43 S.Ct. 354 (citations omitted). The Supreme Court has often reiterated this principle. See, e.g.,Jacobs v. United States, 290 U.S. 13, 16-17,54 S.Ct. 26, 78 L.Ed. 142 (1933) ("The concept of just compensation is comprehensive, and includes all elements, `and no specific command to include interest is necessary when interest or its equivalent is a part of such compensation.'" (quotingSeaboard Air Line Ry., 261 U.S. at 306, 43 S.Ct. 354));Albrecht v. United States, 329 U.S. 599, 602,67 S.Ct. 606, 91 L.Ed. 532 (1947) ("Thus, `just compensation' in the constitutional sense, has been held . . . to be fair market value at the time of the taking plus `interest' from that date to the date of payment."). In a more recent case, KirbyForest Industries, Inc. v. United States, 467 U.S. 1, 9-10,104 S.Ct. 2187, 81 L.Ed.2d 1 (1984), the Supreme Court held:
 "The United States has the authority to take private property for public use by eminent domain, Kohl v. United States, 91 U.S. 367, 371 (1876), but is obliged by the Fifth Amendment to provide `just compensation' to the owner thereof. `Just compensation,' we have held, means in most cases the fair market value of the property on the date it is appropriated. United States v. 564.54 Acres of Land, 441 U.S. 506, 511-13 (1979). `Under this standard, the owner is entitled to receive "what a willing buyer would pay in cash to a willing seller" at the time of the taking.' Id., at 511 (quoting United States v. Miller, 317 U.S. 369, 374 (1943))." *Page 1098 
(Footnote omitted.) These cases and others like them instruct us that interest must be included as a part of "just compensation," but we do not find in any of these cases that any specific rate of interest, whether prejudgment or postjudgment, is prescribed.
This Court has held that post-judgment interest in a condemnation action, like the interest awarded on judgments in most cases, "is a statutorily created right that can be taken away by the Legislature." Williams, 730 So.2d at 176. See also Lance, supra, and LeCroy, supra. It is "the prejudgment-interest portion of a condemnation award, unlike its post-judgment counterpart, [that] is part of the just compensation mandated by both the state and federal constitutions." Williams, 730 So.2d at 176. Courts from other jurisdictions hold similarly.
 "Of course, preverdict interest in eminent domain cases is based on the constitutional requirement of just compensation, while post-verdict and post-judgment interest are matters of legislative grace and thus are not generally subject to said constitutional requirement."
Guido v. State, 187 Misc.2d 647, 651,722 N.Y.S.2d 694, 697 (N.Y.Ct.Cl. 2000) (citations omitted).
 "Although the district court was not restricted by the statutory rate of interest in compensating for the prejudgment interest, a similar argument cannot be made as to postjudgment interest. Disregard of the statutory rate for prejudgment interest was based on the principle that compensation under the fifth and fourteenth amendments to the United States Constitution is a question of fact that may not be restricted by statute. See Miller [v. United States, 223 Ct.Cl. 352, 620 F.2d 812, 837 (1980)]. Nevertheless, once a `taking has been properly reduced to a judgment, the constitutional requirement of `just compensation' has been satisfied. Application of the statutory restrictions will not interfere with the landowners['] right to seek full and complete compensation."
Clark County v. Alper, 100 Nev. 382, 394-95,685 P.2d 943, 951 (1984).
Nevertheless, we need not address at this time whether postjudgment interest is constitutionally mandated as a part of just compensation. Assuming for the sake of argument that such interest is constitutionally mandated, the legislature has provided for postjudgment interest, as applied in this case, and we do not find that rate to be unreasonable. As the United States Court of Claims stated in Miller v.United States, 223 Ct.Cl. 352, 620 F.2d 812, 837 (1980), "the rate of interest set by a statute can be applied to a claim for just compensation if such rate is reasonable and judicially acceptable."
The rate of postjudgment interest established by the legislature for eminent domain cases is based upon the "most recent weekly average one-year constant maturity yield, as published by the Board of Governors of the Federal Reserve System." See § 18-1A-211(a). We note that Congress has provided for a similar rate of interest on judgments against the United States. See 28 U.S.C. § 2516(b) ("Interest on a judgment against the United States affirmed by the Supreme Court after review on petition of the United States is paid at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."). We further note that the Code of Federal Regulations provides two descriptions of the constant maturity yield used by the Department of the Treasury and *Page 1099 
adopted by the legislature in § 18-1A-211(a). See31 C.F.R. § 351.10 (2006) (dealing with the currentness of regulations relating to money and finance):
 "We use market yields, or market bid yields, derived from Treasury bills, notes, and bonds, to create a yield curve based on the most actively traded Treasury securities. This curve relates the yield on a security to its time to maturity. Yields at particular points on the curve are referred to as `constant maturity yields' and are determined by the Treasury from this daily yield curve. Six-month and 5-year Treasury securities rates are derived from these yield curves."
See also 7 C.F.R. pt. 1786, subpt. E, App. B (2007) (dealing with the currentness of U.S. Department of Agriculture regulations):
 "Description of the Treasury Constant Maturity Series
 "Yields on Treasury securities at `constant maturity' are interpolated by the U.S. Treasury from the daily yield curve. This curve, which relates the yield on a security to its time to maturity, is based on the closing market bid yields on actively traded Treasury securities in the over-the-counter market. These market yields are calculated from composites of quotations reported by five leading U.S. Government securities dealers to the Federal Reserve Bank of New York. The constant maturity yield values are read from the yield curve at fixed maturities, currently 1, 2, 3, 5, 7, 10, and 30 years. This method provides a yield for a 10-year maturity, for example, even if no outstanding security has exactly 10 years remaining to maturity."
We conclude that the rate for post-judgment interest adopted by the legislature in § 18-1A-211(a) for eminent domain cases is reasonable and acceptable, thereby satisfying the requirement for "just compensation."
The landowners also argue, in essence, that the interest rate provided for in § 18-1A-211(a) is insufficient to adequately compensate them for the loss of the use of the proceeds from the judgment of compensation during the time this case was pending on appeal.[4] Any argument that the applicable rate is inadequate must be addressed to the legislature rather than to this Court. "Matters of policy are for the Legislature and, whether wise or unwise, legislative policies are of no concern to the courts."Marsh v. Green, 782 So.2d 223, 231 (Ala. 2000).
Finally, the landowners argue that if this Court does not affirm the 12% interest rate used by the circuit court in computing postjudgment interest, a more appropriate interest rate would be the 6% interest rate provided in § 23-3-5, Ala. Code 1975, because the taking was for a limited-access road. Section 23-3-5 deals with limited-access highways designated as a part of the national interstate-highway system. This Court stated in McMillan, Ltd. v. Warrior Drilling Engineering Co., 512 So.2d 14, 25 (Ala. 1986): "'[A]n appellee, though he files no cross-appeal or cross-petition, may offer in support of his judgment any argument that is supported by the record, whether it was ignored by the court below or flatly rejected.'" (quoting 9 J. Moore and B. Ward, Moore'sFederal Practice ¶ 204.11[2] (2d ed. 1985)). The landowners' final argument is offered neither in support of their judgment nor is *Page 1100 
it supported by the record, having been raised for the first time on appeal. We therefore do not consider the landowners' argument that we should reverse the circuit court's judgment awarding post-judgment interest at a rate of 12% in favor of a different interest rate that was never presented to the circuit court.
 V. Conclusion
Section 18-1A-211(a) establishes the rate of postjudgment interest applicable in an eminent domain case. As of the date of the judgment of compensation, June 3, 2005, that interest rate was 3.28%. Therefore, the circuit court erred in computing postjudgment interest in this case at a rate of 12%. We reverse the judgment awarding postjudgment interest, and remand the cause for the circuit court to enter a judgment awarding postjudgment interest at the rate of 3.28% for a total amount of net postjudgment interest due of $2,239.87.
REVERSED AND REMANDED WITH DIRECTIONS.
COBB, C.J., and SEE, WOODALL, STUART, SMITH, BOLIN, PARKER, and MURDOCK, JJ., concur.
[1] We note that according to the record, the total principal deposited with the Court by ALDOT was actually $374,346.35. Neither party explains why the amount paid to the landowners included a principal amount of only $374,346.
[2] Section 8-8-10, Ala. Code 1975, states:
 "Judgments for the payment of money, other than costs, if based upon a contract action, bear interest from the day of the cause of action, at the same rate of interest as stated in said contract; all other judgments shall bear interest at the rate of 12 percent per annum. . . ."
[3] Section 18-1A-30(b), Ala. Code 1975, states:
 "In the event of an appeal to the circuit court, the condemnor shall pay the owner interest upon any part of the award deposited in probate court and not made available to the owner within 40 days of the order of condemnation in the probate court at a rate equal to the rate allowed to be charged on money judgments as set forth in Section 8-8-10 as amended at the date of the final order in the circuit court, with the interest to be computed by the circuit court."
[4] The landowners also assert that the weekly average one-year constant maturity yield as published by the Federal Reserve System for each week since June 3, 2005, has been higher than 3.28%. They acknowledge in their brief, however, that "[t]he rate of interest called for in Ala. Code § 18-1A-211
would have been 3.28%." This concession moots this issue.