11 So.3d 194 (2008)
ALABAMA DEPARTMENT OF CONSERVATION AND NATURAL RESOURCES et al.
v.
EXXON MOBIL CORPORATION f/k/a Exxon Corporation.
1070716.
Supreme Court of Alabama.
December 12, 2008.
*195 Robert T. Cunningham, Jr., Richard T. Dorman, David G. Wirtes, Jr., and George M. Dent III of Cunningham Bounds LLC, Mobile; and Jere L. Beasley and J. Cole *196 Portis of Beasley, Allen, Crow, Methvin, Portis & Miles, P.C., Montgomery, for appellants.
Samuel H. Franklin and M. Christian King of Lightfoot, Franklin & White, L.L.C., Birmingham; and David R. Boyd and W. Joseph McCorkle, Jr., of Balch & Bingham, LLP, Montgomery, for appellee.
BOLIN, Justice.
This case has been before this Court on two prior occasions. See Exxon Corp. v. Dep't of Conservation & Natural Res., 859 So.2d 1096 (Ala.2002), and Exxon Mobil Corp. v. Alabama Dep't of Conservation & Natural Res., 986 So.2d 1093 (Ala.2007), for a detailed statement of the history and factual background of the case.
In 1981 and again in 1984 Exxon Mobil Corporation, formerly known as Exxon Corporation ("Exxon"), leased sites in the Mobile Bay natural-gas fields from the State of Alabama. In addition to paying $573.3 million in nonrefundable bonuses to the State for the leases, Exxon agreed to pay royalties to the State based on the production from the wells it drilled in the leased areas of Mobile Bay. Following audits of the leaseholds by the Alabama Department of Conservation and Natural Resources ("DCNR"), the State agency responsible for overseeing the leases, a disagreement arose between the State and Exxon regarding the manner in which Exxon was calculating the royalties payable to the State under the leases. In a letter to Exxon dated February 4, 1997, DCNR stated that Exxon had paid to the State $102,915,386 in royalties for the period beginning October 1, 1993, through December 31, 1995, and that, according to DCNR's calculations, Exxon owed the State an additional $50,495,418 in royalties. Exxon and DCNR continued to negotiate the correct interpretation of the royalty provisions of the leases, but no mutually agreeable settlement was reached.
On July 28, 1999, Exxon sued the State, seeking a judgment declaring the proper method of calculating royalties under the lease form pursuant to which Exxon leased the sites in Mobile Bay. The State asserted a counterclaim against Exxon, alleging breach of contract and fraud and claiming that Exxon had fraudulently underpaid royalties on the leases from October 1, 1993, the date production from the leased fields began. The State amended its counterclaim to assert a claim for punitive damages. Subsequently, the trial court realigned the parties naming the State as the plaintiff and Exxon as the defendant, and the case proceeded to trial.
On December 19, 2000, the jury returned a verdict for the State and awarded it $60,194,174 in additional royalties for the period between October 1, 1993, through December 1999, plus interest of $27,498,521, calculated at the statutory rate of 12%. On December 20, 2002, this Court reversed the judgment and remanded the case, holding that the trial court had impermissibly admitted into evidence a confidential letter written by Exxon's in-house counsel. See Exxon Corp., 859 So.2d at 1108.
Following a trial after that remand, the jury returned a verdict in favor of the State and awarded it $63,769,568 in additional royalties for the period from October 1993 through December 2002. The jury found that, of that amount, $23,449,186 was the result of Exxon's fraudulent suppression of information relating to royalty payments through February 1997. The jury also awarded the State $11.8 billion in punitive damages. Pursuant to § 9-17-33(d), Ala.Code 1975, the trial court, on November 19, 2003, added to the compensatory-damages award an additional $39,235,154, which represented *197 statutory interest in the amount of 12%. The trial court entered a final judgment in favor of the State on that same date for the full verdict amount of $11,902,827,801.[1]
On December 1, 2003, Exxon moved the trial court for a hearing to obtain guidance on how to compute future royalty payments, based on the jury's verdict. On December 5, 2003, the trial court entered an order denying Exxon's request for a hearing and directing Exxon to pay the royalties "according to the plain, unambiguous language of the leases as reflected in the jury's verdict." Exxon also moved the trial court for a postverdict judgment as a matter of law or, alternatively, for a new trial or a remittitur. Following a Hammond/Green Oil[2] hearing, the trial court entered an order reducing the punitive-damages award to $3.5 billion and denying the motion for a judgment as a matter of law or a new trial.
The jury's verdict for each of the claims asserted by the State was as follows:
1. Royalty due for unpaid volumes of gas: $15,570,921;
2. Royalty due for improper royalty rates: $12,075,343;
3. Royalty due on deductions taken: $28,112,819;
4. Royalty due on value of cogenerated electricity: $2,953,043;
5. Royalty due on sulfur production: $4,379,048; and
6. Royalty due on condensate: $678,394.
As mentioned above, of the $63,769,568 in additional royalties awarded the State by the jury, the jury, by completing a blank on the verdict form, attributed $23,449,186 to fraud.
On appeal, this Court reversed the $15,570,921 judgment awarding the State royalties due for unpaid volumes of gas in the amount of $6,804,492; reversed the judgment awarding the State $4,379,048 in royalties due on sulfur production; and reversed the judgment awarding the State $678,394 in royalties due on the condensate oil. Additionally, this Court concluded that the State had failed to establish its fraud claim as a matter of law, and it reversed the judgment in favor of the State on the fraud claim. This Court stated:
"In conclusion, we affirm the judgment entered on the $63,769,568 jury verdict for compensatory damages on the contractual issues only in the principal amount of $51,907,634. In all other respects, we reverse the judgment as to compensatory damages. We remand the cause for the trial court to enter a judgment in favor of the State and against Exxon on the breach-of-contract claims and to award compensatory damages, with interest, in an amount consistent with this opinion.
"No fraud was proven under Alabama law, and the verdict and punitive damages awarded on the fraud claim should have been precluded by the trial court's entry of a [judgment as a matter of law] for Exxon on this claim. Accordingly, we reverse the judgment in favor of the State on the fraud claim, and we instruct the trial court on remand to enter a *198 judgment in favor of Exxon on the State's fraud claim."
Exxon Mobil Corp., 986 So.2d at 1118.
In order to facilitate this Court's mandate that a final judgment be entered in favor of the State on the contractual issues and that compensatory damages be awarded, with interest, the parties on remand agreed to the following:
1. That Exxon owed the State $31,907,638[3] in unpaid royalties for the production months October 1993 through December 2002, which were encompassed in the trial court's judgment of November 19, 2003;
2. That Exxon owed the State $26,255,150 in interest pursuant to § 9-17-33(d), Ala.Code 1975, for the unpaid royalties due from October 1993 through the judgment date of November 19, 2003;
3. That Exxon owed the State $29,373,080[4] in postjudgment interest pursuant to § 8-8-10, Ala.Code 1975, on the $31,907,638 of unpaid royalties and $26,255,150 of interest pursuant to § 9-17-33(d), from November 19, 2003, through January 31, 2008;[5]
4. That Exxon owed the State $26,266,395 in additional royalties for the production months January 2003 (the first month in which a royalty payment came due following this Court's December 2002 decision) through August 2007 (the last month for which a royalty payment came due before this Court's November 2007 decision) that were not encompassed in the trial court's judgment of November 19, 2003, but were subject to the trial court's declaratory judgment of December 5, 2003, which stated that Exxon was to pay future royalties "according to the plain and unambiguous language of the leases as reflected by the jury's verdict";
5. That Exxon owed the State $7,708,968 of interest pursuant to § 9-17-33(d), Ala.Code 1975, on the $26,266,395 of additional royalties from January 2003 through January 31, 2008 (the "date certain" on which Exxon paid the judgment).
However, two significant points of disagreement arose between the parties regarding the interest owed the State by Exxon. In addition to the $29,373,080 in postjudgment interest the State was entitled to for the period November 19, 2003, through January 31, 2008, the State claimed that Exxon owed, pursuant to § 9-17-33(d), an additional $16,113,836 in interest on the judgment amount of $31,907,638 the $51,906,631 principal amount affirmed by this Court less a $20,000,000 paymentfor that same period. The State argued that because the amount of $31,907,638 owed by Exxon was not paid until January 31, 2008, the State was entitled, pursuant to § 9-17-33(d), to interest on that amount from November 19, 2003, until January 31, 2008, the date it was paid. In other words, the State claims that interest pursuant to § 9-17-33(d) should run concurrently with the postjudgment interest pursuant to § 8-8-10 from November 19, 2003, through January 31, 2008.
Second, in addition to the $7,708,968 in interest on the additional royalty amount *199 of $26,266,395 the State was entitled to pursuant to § 9-17-33(d) from January 2003 through January 31, 2008, the State claimed that Exxon owed, pursuant to § 8-8-10, an additional $6,898,725 in postjudgment interest on the additional royalty amount of $26,266,395 from December 5, 2003, until Exxon satisfied the judgment on January 31, 2008. The State argued that the trial court's declaratory judgment of December 5, 2003, which ordered Exxon to pay future royalty payments "according to the plain, unambiguous language of the leases as reflected in the jury's verdict" had the effect of incorporating into that judgment each monthly royalty payment as it came due. Thus, the State argued that it is entitled to postjudgment interest pursuant to § 8-8-10 from the date of the declaratory judgment on December 5, 2003, until the judgment was satisfied by Exxon on January 31, 2008. In other words, the State claims that postjudgment interest pursuant to § 8-8-10 should run concurrently with interest pursuant to § 9-17-33(d), from December 5, 2003, the date of the declaratory judgment, through January 31, 2008, the date the judgment was paid.
Exxon argued in opposition that to allow interest under §§ 9-17-33(d) and 8-8-10 to run concurrently, as the State urges, would result in its paying interest at a doubled rate of 24%. Exxon argued that Alabama law does not permit a party to collect both prejudgment and postjudgment interest because that would constitute compound interest, which is prohibited.
Following a hearing, the trial court, on January 31, 2008, entered a judgment in favor of the State and against Exxon for the amounts agreed to by the parties as set out above. However, the trial court denied the State's claim for interest in the amount of $16,113,836 pursuant to § 9-17-33(d) for the period November 19, 2003, through January 31, 2008, and it further denied the State's claim for postjudgment interest in the amount of $6,898,725 pursuant to § 8-8-10 for the period December 5, 2003, through January 31, 2008. On January 31, 2008, Exxon paid to the State $121,511,231 in satisfaction of the judgment entered against it. On that same date, the State filed with the trial court a notice of partial satisfaction of the judgment and expressly reserved its right to appeal the trial court's denial of its claim for additional interest under §§ 9-17-33(d) and 8-8-10. The State filed its timely notice of appeal on February 21, 2008.

Standard of Review
Because this appeal involves only questions of law relating to the applicability of §§ 9-17-33(d) and 8-8-10, Ala.Code 1975, our review is de novo. Alabama Dep't of Transp. v. Williams, 984 So.2d 1092 (Ala. 2007).

Discussion

I. Interest under § 9-17-33(d) from November 19, 2003, through January 31, 2008
The parties agreed that Exxon owed the State $29,373,080 in postjudgment interest pursuant to § 8-8-10, from November 19, 2003, the date that the trial court entered a judgment on the jury's verdict, through January 31, 2008, the date Exxon paid the judgment. However, the State contends on appeal that Exxon owes an additional $16,113,836 in interest pursuant to § 9-17-33(d) on the remitted judgment amount of $31,907,638 from November 19, 2003, through January 31, 2008. The State argues that interest under § 9-17-33(d) is in the nature of a penalty and that because the judgment amount of $31,907,638 remained unpaid until January 31, 2008, it is entitled to *200 interest under § 9-17-33(d) for each month the judgment remained unpaid from November 19, 2003, through January 31, 2008.
Exxon argues that the interest imposed under § 9-17-33(d) is prejudgment interest, which no longer accrued once the trial court entered its judgment on November 19, 2003, that adjudicated and fixed Exxon's liability on unpaid royalties from October 1993 through December 2002. Rather, Exxon contends that postjudgment interest pursuant to § 8-8-10 began to run on November 19, 2003, and accrued from that date until the judgment was paid on January 31, 2008.
Section 9-17-33(d), Ala.Code 1975, provides:
"(d) Any first purchaser of production or operator and/or owner of the right to drill substituted for the first commercial purchaser as provided herein, that violates this section shall be liable to the persons legally entitled to the proceeds from production for the unpaid amount of the proceeds plus interest at the rate of 12 per cent per annum, the interest accruing from the date at which the proceeds were due as specified herein."
Nothing in the text of § 9-17-33(d) expressly indicates that that section is penal in nature. However, the title of the bill that enacted § 9-17-33(d) states that the bill is "[t]o provide for and prescribe time limits in which proceeds derived from the sale of oil and gas production shall be paid to the person or persons legally entitled thereto and to further prescribe interest penalties for failure to meet the said limits." Act No. 82-557, Ala. Acts 1982. Although § 9-17-33 was amended in 1991, subsection (d) remained unchanged. The title of the bill amending § 9-17-33 in 1991 states that the bill is
"[a]n Act, to amend Section 9-17-33 of the Code of Alabama 1975, as amended, relating to the disposition of proceeds or royalties from the sale of oil or gas production, penalties for violations and judicial jurisdiction, so as to further provide therefor and for payment information requirements to interest owners; to provide for definitions for the section and exceptions; and to provide an effective date."
Act No. 91-681, Ala. Acts 1991. Section 9-17-33 was again amended in 1999. See Act No. 99-396, Ala. Acts 1999. Although the text of § 9-17-33(d) remained unchanged by this most recent amendment, the term "penalty" was omitted from the title of the bill amending § 9-17-33.
In interpreting § 9-17-33(d), it is appropriate for this Court to look to other jurisdictions that have interpreted similarly worded statutes. Cagle v. City of Gadsden, 495 So.2d 1142 (Ala.1986). Both parties cite this Court to the Oklahoma Supreme Court's decision in Fleet v. Sanguine, Ltd., 854 P.2d 892 (Okla.1993). At issue in Fleet was Okla. Stat., tit. 52, § 540(b) (1981), which provided the following:
"`Any said first purchasers or owner of the right to drill and produce substituted for the first purchaser as provided herein that violates this act [52 O.S.1981 § 540] shall be liable to the persons legally entitled to the proceeds from production for the unpaid amount of such proceeds with interest thereon at the rate of twelve percent (12%) per annum, as the penalty.'"
854 P.2d at 897 n. 14 (emphasis added). The language then contained in § 540(b) is virtually identical to the language contained in § 9-17-33(d), except that § 540(b) expressly referred to providing for interest on unpaid royalties "as a penalty." The court in Fleet characterized *201 § 540(b)[6] as a penalty provision that, nevertheless, provided for "prejudgment interest" at a rate of 12%. Fleet, 854 P.2d at 895. We find the Fleet court's treatment of the language in § 540(b) to be persuasive in our treatment of the nearly identical language in § 9-17-33(d) and conclude that § 9-17-33(d), which is penal in nature, nevertheless provides for prejudgment interest on the unpaid royalties.[7]
"Prejudgment interest runs until the date of the judgment; postjudgment interest runs thereafter." State v. Marble City Plaza, Inc., 989 So.2d 1059, 1060 n. 4 (Ala.Civ.App.2006), aff'd, 989 So.2d 1065 (Ala.2007). Because we have concluded that the interest on unpaid royalties payable pursuant to § 9-17-33(d) is prejudgment interest, the State is entitled to interest under § 9-17-33(d) up to November 19, 2003, the date on which the trial court entered its judgment, at which point interest imposed pursuant to § 9-17-33(d) ceased to accrue.
This holding is further supported by analogous precedent set forth in Burgess Mining & Construction Corp. v. Lees, 440 So.2d 321 (Ala.1983). Section 8-8-8, Ala. Code 1975, sets forth the time from which interest accrues upon a breach of contract: "All contracts, express or implied, for the payment of money ... bear interest from the day such money ... should have been paid." This section, however, fails to designate when this interest ceases to accrue.
Burgess, however, considered the relationship between § § 8-8-1 (entitled "Maximum rates of interestGenerally") and 8-8-10 (entitled "Interest on money judgments and costs," as amended after the plaintiff's cause of action in Burgess accrued but before the circuit court's entry of a final judgment). This Court stated in Burgess:
"The consideration of the applicable rate of interest in this case warrants a discussion of the appropriate interest rate for prejudgment as opposed to postjudgment interest.
"Section 8-8-1 states:
"`Except as otherwise provided by law, the maximum rate of interest upon the loan or forebearance of money, goods or things in action, except by written contract is $6.00 upon $100.00 for one year, and the rate of interest by written contract is not to exceed $8.00 upon $100.00 for one year and at that rate for a greater or less sum or for a longer or shorter time.'

*202 "The legislature `otherwise provided by law' that postjudgment interest, where no other rate is established by contract, should be 12% per annum. As amended, § 8-8-10 reads in relevant part:
"`Judgments for the payment of money, other than costs, if based upon a contract action, bear interest from the day of the cause of action, at the same rate of interest as stated in said contract; all other judgments shall bear interest at the rate of twelve (12) percent per annum, the provisions of Section 8-8-1 of the Code of Alabama 1975 to the contrary notwithstanding;...' (Emphasis added).
"The legislature chose not to amend, but rather left unchanged, § 8-8-1, upon enactment and subsequent amendment of § 8-8-10.
"Utilizing the general rules of statutory construction, we cannot read § 8-8-10, as amended, as providing for 12% prejudgment interest. No statute `otherwise provide[s]' for prejudgment interest at any other rate than the legal rate. Consequently, the Court holds that where, as in this case, no written contract controls the interest rate, thereby precluding the 8% rate of 8-8-1, the legal rate of prejudgment interest is 6% per annum. See Southern Security Services, Inc. v. Esneault, 435 So.2d 1309 (Ala.Civ.App.1983).
"In this case, Lees is entitled to prejudgment interest of 6% from October 26, 1977, until the judgments were entered on September 15, 1982, and postjudgment interest of 12% thereafter."
440 So.2d at 337-38.
In this case, the legislature also "otherwise provided by law" when it enacted § 9-17-33(d), Ala.Code 1975, providing for "12 percent per annum" interest on the unpaid amount of proceeds from the sale of oil or gas production. Neither § 9-17-33(d) nor §§ 8-8-1 and 8-8-8 provide for a specific end date upon which the interest allowed under these sections should cease, whether by payment or by final judgment. However, Burgess makes clear the difference between the applicable prejudgment-interest statute and the postjudgment-interest statute involved there, providing that interest as allowed by a statute (§ 8-8-1), which is similar to § 9-17-33(d) in that neither has a stated end date, is prejudgment interest, and that postjudgment interest per § 8-8-10 continues alone after a final judgment is entered.

II. Interest under § 8-8-10 from December 5, 2003, through January 31, 2008
The parties agreed that the State was entitled to $7,708,968 in interest pursuant to § 9-17-33(d) on the additional royalty amount of $26,266,395 from January 2003 through January 31, 2008. However, the State argues on appeal that under § 8-8-10 Exxon owes an additional $6,898,725 in postjudgment interest on the additional royalty amount of $26,266,395 from December 5, 2003, until Exxon satisfied the judgment on January 31, 2008. The State contends that the trial court's declaratory judgment of December 5, 2003, which ordered Exxon to calculate future royalty payments "according to the plain, unambiguous language of the leases as reflected by the jury's verdict" had the effect of incorporating into that judgment each monthly royalty payment as it came due. Thus, the State argues that it is entitled to postjudgment interest pursuant to § 8-8-10 from the date of the declaratory judgment on December 5, 2003, until Exxon satisfied the judgment on January 31, 2008.
Section § 8-8-10, Ala.Code 1975, entitled "Interest on money judgments and costs," provides as follows:

*203 "Judgments for the payment of money, other than costs, if based upon a contract action, bear interest from the day of the cause of action, at the same rate of interest as stated in said contract; all other judgments shall bear interest at the rate of 12 percent per annum, the provisions of Section 8-8-1 to the contrary notwithstanding; provided, that fees allowed a trustee, executor, administrator, or attorney and taxed as a part of the cost of the proceeding shall bear interest at a like rate from the day of entry."
"Section 8-8-10 authorizes the payment of post-judgment interest as compensation for the loss of use of money as a result of the nonpayment of a liquidated sum for which liability has already been determined." Elmore County Comm'n v. Ragona, 561 So.2d 1092, 1093 (Ala.1990). Further, "`[p]ost-judgment interest is not a punishment inflicted on a judgment debtor for exercising the right to appeal. Instead, like pre-judgment interest, post-judgment interest is simply compensation for a judgment creditor's lost opportunity to invest the money awarded as damages at trial.'" Birmingham Pain Ctr., Inc. v. Cosgrove, 896 So.2d 538, 543 (Ala.Civ.App. 2004) (quoting Miga v. Jensen, 96 S.W.3d 207, 212 (Tex.2002)).
Section 8-8-10 applies only when the judgment is one for the payment of money, i.e., a "money judgment." See Bank Independent v. Coats, 621 So.2d 951 (Ala.1993) (holding that judgment following jury's verdict declaring there was no fraudulent conveyance was not a money judgment entitling wife to 12% postjudgment interest). Following the entry of judgment on the jury's verdict in this case, Exxon sought guidance from the trial court on how to apply the jury's verdict to future royalty-payment computations. On December 5, 2003, the trial court entered an order directing Exxon to pay future royalties "according to the plain, unambiguous language of the leases as reflected in the jury's verdict." This judgment did not constitute a money judgment for purposes of § 8-8-10. It did not adjudicate or fix an amount of future royalties owed the State by Exxon. Rather, the judgment simply informed Exxon that it was to compute future royalties according to the leases as interpreted by the jury. Accordingly, because the trial court's December 5, 2003, judgment did not constitute a money judgment, the State is not entitled to postjudgment interest pursuant to § 8-8-10 from the period December 5, 2003, through January 31, 2008.

Conclusion
We conclude that the State is not entitled to the requested interest pursuant to §§ 9-17-33(d) and 8-8-10, and we affirm the trial court's judgment.
AFFIRMED.
SEE, LYONS, WOODALL, STUART, SMITH, PARKER, and MURDOCK, JJ., concur.
COBB, C.J., concurs in part and dissents in part.
COBB, Chief Justice (concurring in part and dissenting in part).
I respectfully dissent from Part I of the opinion, interpreting § 9-17-33(d), Ala. Code 1975. That Code section states:
"Any first purchaser of production or operator and/or owner of the right to drill substituted for the first commercial purchaser as provided herein, that violates this section shall be liable to the persons legally entitled to the proceeds from production for the unpaid amount of the proceeds plus interest at the rate of 12 percent per annum, the interest *204 accruing from the date at which the proceeds were due as specified herein."
Even though the majority acknowledges that § 9-17-33(d) is penal in nature as noted by the 1991 amendment, and even though the plain language of this statute does not limit the interest charged to "prejudgment" interest, the majority nonetheless concludes that language limiting the extent of the penalty to prejudgment interest is contained in the statute.
I am constrained to interpret this statute based upon what it says. As I have said before in an analogous context:
"In the past, this Court operated under a duty to adhere to legal precedent without regard to the outcome of the case, and it consistently concluded that the plain language of a statute required that this Court apply it as stated. The rule was generally stated as follows:
"`"When [a] statutory pronouncement is clear and not susceptible to a different interpretation, it is the paramount judicial duty of a court to abide by that clear pronouncement."'
"Macon v. Huntsville Utils., 613 So.2d 318, 320 (Ala.1992) (quoting Parker v. Hilliard, 567 So.2d 1343, 1346 (Ala. 1990)). This rule has found application even in the recent past. See, e.g., Bright v. Calhoun, 988 So.2d 492, 498 (Ala.2008) (quoting City of Bessemer v. McClain, 957 So.2d 1061, 1074 (Ala. 2006) (`"To discern the legislative intent [for purposes of statutory construction], the Court must first look to the language of the statute. If, giving the statutory language its plain and ordinary meaning, we conclude that the language is unambiguous, there is no room for judicial construction."')); Boutwell v. State, 988 So.2d 1015, 1020 (Ala.2007) (`"[P]rinciples of statutory construction instruct this Court to interpret the plain language of [the] statute to mean exactly what it says and to engage in judicial construction only if the language in the statute is ambiguous." Ex parte Pratt, 815 So.2d 532, 535 (Ala.2001).'); Cleburne County Comm'n v. Norton, 979 So.2d 766, 773 (Ala.2007) (`"`"Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect."'"' (quoting Tolar Constr., LLC v. Kean Elec. Co., 944 So.2d 138, 149 (Ala.2006), quoting in turn Blue Cross & Blue Shield v. Nielsen, 714 So.2d 293, 296 (Ala.1998), quoting in turn IMED Corp. v. Systems Eng'g Assocs. Corp., 602 So.2d 344, 346 (Ala.1992))). I believe that the majority opinion flies in the face of this precedent and the many other cases that have espoused the principle that this Court's paramount duty is to apply the plainly expressed language of the law to mean what it says."
Edwards v. Kia Motors of America, 8 So.3d 277, 284-85 (Ala.2008)(Cobb, C.J., dissenting). Because § 9-17-33(d) imposes interest "from the date at which the proceeds were due," without reference to the date of a particular judgment, I would construe it accordingly, rather than substitute the Court's judgment for that of the legislature. I must therefore dissent as to this part of the opinion. In all other respects, I concur with the opinion.
NOTES
[1] The jury verdict form incorporated into the judgment showed a total of $63,592,647 in additional royalties; the sum of the individual awards, however, equals $63,769,568. The $11,902,827,801 figure reflects the $63,592,647 amount and not the sum of the compensatory awards. See Exxon Mobil Corp., 986 So.2d at 1099 n. 4 and 1102 n. 5.
[2] Hammond v. City of Gadsden, 493 So.2d 1374 (Ala. 1986); Green Oil Co. v. Hornsby, 539 So.2d 218 (Ala.1989).
[3] This $31,907,638 constitutes the $51,907,638 in principal amount affirmed by this Court in its decision of November 1, 2007, less a $20,000,000 payment previously made to the State by Exxon.
[4] Exxon agreed that postjudgment interest pursuant to § 8-8-10, Ala.Code 1975, should accrue on the $26,255,150 in interest owed pursuant to § 9-17-33(d).
[5] For purposes of accurately calculating interest in this case, the parties and the trial court chose January 31, 2008, as the "date certain" for the entry of judgment and satisfaction of that judgment.
[6] Section 540(b) was subsequently amended to remove the "penalty" language from its text and was recodified at Okla. Stat., tit.52, § 570.10D.1 (Supp.1992), which provides, in part, that royalties "not timely paid shall earn interest at the rate of twelve percent (12%) per annum to be compounded annually, calculated from the end of the month in which such production is sold until the day paid." Unlike the current version of § 9-17-33(d), the amended version of § 540(b) (now § 570.10D.1) expressly provides that interest on unpaid royalties is calculated from the date due until the date paid. The Oklahoma courts no longer refer to § 570.10D.1 as a "penalty" provision. Purcell v. Santa Fe Minerals, Inc., 961 P.2d 188 (Okla. 1998).
[7] The dissent states that the author is "constrained to interpret [§ 9-17-33(d)] based upon what it says" and that "`[i]n the past, this Court operated under a duty to adhere to legal precedent without regard to the outcome of the case ....'" (quoting Edwards v. Kia Motors of America, 8 So.3d 277, 284 (Ala.2008)(Cobb, C.J., dissenting)). The dissent seemingly ignores the well established rule of statutory construction that permits this Court to look to other jurisdictions that have interpreted similarly worded statutes. The dissent further ignores Fleetwhich is the only real "legal precedent" presentedin which the Oklahoma Supreme Court construed a statute worded almost identically as § 9-17-33(d) to provide for prejudgment interest.