LYONS, Justice.
The Jefferson County Commission, Bettye Fine Collins, Travis Hulsey, and J.T. Smallwood (hereinafter referred to collectively as “the County”)[1] appeal from orders entered by the Jefferson Circuit Court on December 23, 2009, and January 15, 2010. This Court expedited the proceedings and heard oral arguments from the parties on April 7, 2010. As to the December 23 order, we affirm in part, reverse in part, and remand; as to the January 15 order, we reverse and remand.

I. Factual Background

In 1967, the Alabama Legislature enacted Act No. 406, Ala. Acts 1967 (“the 1967 Act”), authorizing Jefferson County to impose business-license and occupational taxes upon any person engaging in a business for which he or she was not then required to pay a license or privilege tax to either the State or Jefferson County. In 1987, Jefferson County enacted Ordinance No. 1120, which, for the first time, imposed the occupational tax authorized by the 1967 Act. There followed a complex sequence of legislative enactments and related litigation that is discussed in detail in an opinion issued in an earlier appeal in this proceeding. See Jefferson County Commission v. Edwards, 32 So.3d 572 (Ala.2009) (“Jefferson County I ”).
This proceeding is a class action filed in 2007 by Jessica Edwards against the County on behalf of a class composed of *688 taxpayers (hereinafter “the taxpayers”). The taxpayers alleged that the occupational tax levied by Jefferson County was unlawful because the 1967 Act, which authorized the tax, had been repealed by Act No. 99-669, Ala. Acts 1999. The trial court on January 12, 2009, relying on an unrelated opinion of this Court holding that after-the-fact determinations of whether there had been sufficient votes in the legislature to pass a bill violated the doctrine of separation of powers,[2] concluded that the judgment in Jefferson County Employees’ Association v. Jefferson County, No. CV-00-0297, declaring Act No. 99-669 invalid for insufficient votes, was void for want of subject-matter jurisdiction. The trial court then relied on unambiguous language in Act No. 99-669 repealing the 1967 Act to hold that the collection of the occupational tax pursuant to the authority granted in the 1967 Act was illegal. After the 2009 regular legislative session adjourned without the enactment of a statute providing for the continuance of the collection of the tax, the trial court entered an injunction that required that the tax payments received by Jefferson County under Ordinance No. 1120 be placed in escrow. In Jefferson County I, this Court upheld the trial court’s judgment, declaring that Act No. 99-669 had repealed the 1967 Act.
During a specially called legislative session in 2009, while the appeal in Jefferson County I was pending and before oral argument in that case, the legislature enacted Act No. 2009-811, Ala. Acts 2009, which was effective August 14, 2009. Section 7 of Act No. 2009-811 authorized Jefferson County to resume collecting occupational taxes as of the effective date of that act and, relevant to this appeal, approved and ratified Jefferson County’s collection of taxes subsequent to the effective date of Act No. 99-669; § 9 repealed Act No. 99-669; and § 10 included a savings clause permitting the severance of any portion of Act No. 2009-811 found to be unconstitutional while saving the remaining portions not having any constitutional infirmity. We expressly stated in our opinion in Jefferson County I that the effect of Act No. 2009-811 was not then before us.
After our affirmance of the trial court’s judgment in Jefferson County I, the taxpayers, in light of the retroactivity provisions in Act No. 2009-811, filed a motion to release the tax proceeds that had been placed in the escrow fund to a court-appointed settlement administrator for the calculation of refunds due. The County filed a motion to dissolve the injunction, to vacate the escrow order, and to release the escrowed taxes to Jefferson County. The taxpayers then filed a motion to enforce the January 12, 2009, order; the County filed a motion to clarify the escrow period. On December 23, 2009, the trial court entered an order denying the County’s motion to dissolve the injunction, holding that Act No. 2009-811 violates § 95 of the Alabama Constitution of 1901 prohibiting the enactment of legislation taking away a cause of action after a suit based on that cause of action has been filed. The trial court’s order also required the County to transfer the moneys in the escrow fund, together with the interest accrued, to a special master charged with administering refunds of the taxes Jefferson County had *689 collected between January 12, 2009, and August 14, 2009. The County appealed from the order of December 23, 2009 (case no. 1090437).
On January 15, 2010, the trial court entered an order purporting to certify the December 23, 2009, order as final pursuant to Rule 54(b), Ala. R. Civ. P.[3] The trial court also ordered the County to pay post-judgment interest accruing during the pendency of this appeal. The County appealed from the order of January 15, 2010 (case no. 1090517).

II. Analysis

A. Applicability of the Doctrine of Estoppel or Waiver

We are met at the threshold by the taxpayers’ contention that in several instances former counsel for the County admitted that § 95 rendered the retroactive feature of Act No. 2009-811 void. The taxpayers contend that, in light of former counsel’s admission, judicial estoppel prevents the County from taking a contrary position in this proceeding. In the alternative, the taxpayers argue that the County has waived the position it takes in this appeal. We conclude that neither the doctrine of judicial estoppel nor the doctrine of waiver applies.
In Ex parte First Alabama Bank, 883 So.2d 1236, 1244 (Ala.2003), quoting New Hampshire v. Maine, 532 U.S. 742, 750-51, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001), this Court recognized an essential element of judicial estoppel — the party attacked for asserting an inconsistent position must have been successful in the prior proceeding so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first court or the second court was misled. No such circumstance exists here. Nor can the County be held to have waived its position for failing to assert the mootness of this proceeding based on Act No. 2009-811 in its application for rehearing in Jefferson County I. As previously noted, the issue of the effect of Act No. 2009-811 was not before us in Jefferson County I, and any argument on rehearing asserting the applicability of Act No. 2009-811 would have violated our rule prohibiting new matters from, being argued for the first time on rehearing and would not have been considered. See Chism v. Jefferson County, 954 So.2d 1058, 1106 (Ala.2006).

B. Challenge to the Constitutionality of Act No. 2009-811

The second sentence of § 95 of the Alabama Constitution of 1901 provides:
“After suit has been commenced on any cause of action, the legislature shall have no power to take away such cause of action, or destroy any existing defense to such suit.”
Section 7 of Act No. 2009-811 provides:
“All actions of the governing body in continuously levying, collecting and enforcing the levy of the county occupational and license taxes pursuant to [the 1967 Act] since the time of the initial levies thereof, particularly from and after the effective date of Act 99-669; 1999 Second Special Session (Acts 1999, p. 168) are hereby ratified, validated, and confirmed. This act is therefore intended to be retroactive and curative to November 29, 1999; and all the exemptions originally provided in [the 1967 Act] shall remain in effect, except for the exemption for any person required to pay a privilege or license tax to the state or the county by Article 1, Chapter *690 20, Title 51 of the Code of Alabama 1940, which shall expire January 1, 2010, and the rate of tax shall be the rate at which the tax was levied on the effective date of this act until January 1, 2010, at which time the maximum shall be the rate specified in Section 6. On and after January 1, 2010, the county governing body shall have no authority to levy an occupational tax under [the 1967 Act].”
(Emphasis added.) Section 9 of Act No 2009-811 expressly repeals Act No. 99-669, the act the trial court and this Court determined to have eliminated Jefferson County’s authority to impose the occupational tax. Section 10 of Act No. 2009-811 provides:
“If any provision of this action shall be held by any court of competent jurisdiction to be invalid, such invalidity shall not affect any other provisions of this act and the act shall be given full force and effect as completely as if the invalid provision had not been included.”
We examine the constitutionality of Act No. 2009-811 with the presumption that it is constitutional. See 1568 Montgomery Highway, Inc. v. City of Hoover, 45 So.Sd 819, 328-29 (Ala.2010):
“ ‘ “Our review of constitutional challenges to legislative enactments is de novo.” Richards v. Izzi, 819 So.2d 25, 29 n. 3 (Ala.2001). Additionally, acts of the legislature are presumed constitutional. State v. Alabama Mun. Ins. Corp., 730 So.2d 107, 110 (Ala.1998). See also Dobbs v. Shelby County Econ. & Indus. Dev. Auth., 749 So.2d 425, 428 (Ala.1999) (“In reviewing the constitutionality of a legislative act, this Court will sustain the act ‘ “unless it is clear beyond reasonable doubt that it is violative of the fundamental law.” ’ White v. Reynolds Metals Co., 558 So.2d 373, 383 (Ala.1989) (quoting Alabama State Fed’n of Labor v. McAdory, 246 Ala. 1, 9, 18 So.2d 810, 815 (1944)).”). We approach the question of the constitutionality of a legislative act “ ‘ “with every presumption and intendment in favor of its validity, and seek to sustain rather than strike down the enactment of a coordinate branch of the government.” ’ ” Monroe v. Harco, Inc., 762 So.2d 828, 831 (Ala.2000) (quoting Moore v. Mobile Infirmary Ass’n, 592 So.2d 156, 159 (Ala.1991), quoting in turn McAdory, 246 Ala. at 9, 18 So.2d at 815).
“‘Moreover, in order to overcome the presumption of constitutionality, ... the party asserting the unconstitutionality of the Act ... bears the burden “to show that [the Act] is not constitutional.” Board of Trustees of Employees’ Retirement Sys. of Montgomery v. Talley, 291 Ala. 307, 310, 280 So.2d 553, 556 (1973). See also Thorn v. Jefferson County, 375 So.2d 780, 787 (Ala.1979) (“It is the law, of course, that a party attacking a statute has the burden of overcoming the presumption of constitutionality ...”)).’
“State ex rel. King v. Morton, 955 So.2d 1012, 1017 (Ala.2006).”
Section 95 elaborates on § 43, which calls for the separation of powers among the judicial, legislative, and executive branches of government:
“In the government of this state, except in the instances in this Constitution hereinafter expressly directed or permitted, the legislative department shall never exercise the executive and judicial powers, or either of them; the executive shall never exercise the legislative and judicial powers, or either of them; the judicial shall never exercise the legislative and executive powers, or either of them; to the end that it may be a government of laws and not of men.”
*691 Section 95 restricts the legislature from acting on matters that are within the breast of the judicial system by taking away a pending cause of action. However, we cannot construe § 95 beyond its intended sphere of operation and thereby encroach upon the legitimate power of the legislature. In the context of this case, the authority of the legislature to impose a retroactive tax is beyond question. See, e.g., General Motors Acceptance Corp. v. Dubose, 834 So.2d 67 (Ala.2002); Blockbuster, Inc. v. White, 819 So.2d 43 (Ala.2001); South Cent. Bell Tel. Co. v. State, 789 So.2d 147 (Ala.2000). A similar result has been reached with respect to acts of Congress. See, e.g., United States v. Carlton, 512 U.S. 26, 114 S.Ct. 2018, 129 L.Ed.2d 22 (1994), in which the Court upheld the closing of a loophole that retroactively subjected certain taxpayers to a tax liability that did not theretofore exist.
Limitations on the legislature’s ability to impose a retroactive tax have been recognized where concerns over due process of law are implicated. The Court of Civil Appeals in IEC Arab Alabama, Inc. v. City of Arab, 7 So.3d 370, 374 (Ala.Civ.App.2008), stated:
“Turning to the issue of the constitutional challenge to the retroactivity provision, we noted that retroactive tax legislation had been historically upheld by the courts. [Monroe v. Valhalla Cemetery Co., 749 So.2d 470, 473 (Ala.Civ.App.1999), overruled on other grounds, Patterson v. Gladwin Corp., 835 So.2d 137, 153 (Ala.2002) ]. When a court is called on to consider whether retroactive legislation is constitutional, its focus is on whether the retroactivity of the legislation denies due process. Id. at 473-74 (quoting United States v. Carlton, 512 U.S. 26, 30-31, 114 S.Ct. 2018, 129 L.Ed.2d 22 (1994)). In Carlton, ‘the [United States Supreme] Court set forth the test to determine whether retroactive tax legislation denies due process: first, the legislation must be “supported by a legislative purpose furthered by rational means,” and second, the period of retroactivity must be “modest.” ’ Valhalla Cemetery Co., 749 So.2d at 474 (quoting Carlton, 512 U.S. at 31, 114 S.Ct. 2018).”
Whether limits on the extent of retroactive tax liability based upon considerations of due process could deprive Act No. 2009-811 of a field of operation in that it constitutes a new tax, as opposed to an adjustment of the rate in an existing tax, is a question not before us. The taxpayers expressly renounced in the trial court any basis for challenge other than the contention that Act No. 2009-811 took away of a cause of action in contravention of § 95. Counsel for the taxpayers stated at a hearing in the trial court:
“If I may, the only reason we’re doing the serving the attorney general issue to be perfectly honest regards Article IV, Section 95, to the extent that application of Article IV, Section 95, may call into question an as applied constitutional validity of Section 7 of Act 2009-811. We have no interest in challenging the validity of Act 2009-811 in any other respect except as it applies to the retroactivity provisions specifically tailored to our clients and no others.”
This Court will affirm the judgment of the trial court on any valid legal ground presented by the record, regardless of whether that ground was considered, or even if it was rejected, by the trial court; however, we do not apply this rule to resurrect an omitted affirmative defense. Liberty Nat’l Life Ins. Co. v. University of Alabama Health Servs. Found., P.C., 881 So.2d 1013, 1020 (Ala.2003). The taxpayers’ opposition to the motion to dissolve the injunction based on Act No. *692 2009-811 was met with a claim that Act No. 2009-811 is unconstitutional. We have often described a challenge to the constitutionality of a statute relied upon by the party seeking relief as an affirmative defense. See Ex parte Surtees, 6 So.3d 1157 (Ala.2008); Deputy Sheriffs Law Enforcement Ass’n of Mobile County v. Mobile County, 590 So.2d 239 (Ala.1991); Kittrell v. Benjamin, 396 So.2d 93 (Ala.1981). Based on the abandonment of all grounds other than § 95, we do not consider whether there might be alternative grounds for affirming the trial court’s judgment based on theories independent of § 95.
The phrase “any cause of action,” which § 95 protects from legislative encroachment after suit has been filed, must be analyzed in the context of the cause of action filed by the taxpayers. As previously noted, the taxpayers’ complaint alleged that the occupational tax levied by Jefferson County was unlawful because the 1967 Act, the law that authorized the tax, had been repealed by Act No. 99-669, and, therefore, the taxpayers claimed a refund. The complaint did not assert immunity from retroactive tax liability.[4]
Act No. 2009-811 does not conflict with the taxpayers’ claim that the taxes were collected under a repealed statute, nor does it conflict with our holding in Jefferson County I that the taxpayers were correct in such claim. Had Act No. 2009-811 provided that “there shall be no recovery of taxes illegally collected pursuant to a repealed statute,” a different question would be presented because such language would have indeed taken away the cause of action here asserted — that the occupational tax levied by Jefferson County was unlawful because the 1967 Act, the law that authorized the tax, had been repealed by Act No. 99-669.
The inapplicability of § 95 to curative statutes with retroactive impact in the context of taxation was recognized in dicta in Southern Ry. v. Webb, 232 Ala. 324, 167 So. 729 (1936), in which a curative statute was enacted diming the pendency of litigation seeking a refund. One Justice of this Court added the necessary concurring vote to attain a majority. In doing so, he observed, “I am also of the opinion that section 95 of the Constitution has no application to cases of this kind relating to taxation.” 232 Ala. at 327, 167 So. at 731 (Anderson, C.J., concurring specially). Directly contra to Chief Justice Anderson’s opinion is Lusk v. Starkey, 53 Okla. 794, 798, 158 P. 918, 919 (1916), in which an invalid tax levy was retroactively cured by an act of the Oklahoma legislature. Applying a constitutional provision identical to § 95, the court in Lusk stated:
“[The curative act] probably would constitute a complete answer if this cause had not been commenced before the passage of the curative act. In such circumstances, the rights of the plaintiff seem to be protected by section 52, art. 5, Williams’ Constitution, which provides:
“ ‘After suit has been commenced on any cause of action, the Legislature shall have no power to take away such cause of action, or destroy any existing defense to such suit.’ ”
The Oklahoma court offered no analysis of the scope of the cause of action set forth in the complaint, nor did it consider the power of the legislature to enact retroactive tax legislation. We decline to follow such precedent, because to do so would broaden the language of § 95, an act that is beyond *693 our authority, and simultaneously imper-missibly curtail the authority of the legislature, an act also beyond our authority.
Returning to Act No. 2009-811, we conclude that there remains a problem with a portion of the act. Section 7 of the act “ratified, validated, and confirmed” the collection of the taxes determined to be illegal and, therefore, is the equivalent of an impermissible legislative determination that there could be no recovery of these illegally collected taxes, contrary to the prohibition against taking away a cause of action in § 95. However, in light of the legislature’s authority to impose retroactive taxes, we cannot read the portion of § 7 of Act No. 2009-811 ratifying, validating, and confirming the collection of the illegally collected taxes in isolation from the other portion of § 7 of Act No. 2009-811 that provides “ [t]his Act is therefore intended to be retroactive and curative to November 29, 1999,” and § 9, in which the legislature repealed Act No. 99-669, the statute that rendered the collection of the taxes illegal. By the provisions in Act No. 2009-811 for repeal and retroactive effect, the legislature imposed a retroactive tax, because the repeal of Act No. 99-669 retroactively reinstated Jefferson County’s authority to collect the taxes authorized by the 1967 Act. In other words, while one portion of Act No. 2009-811, standing alone, impermissibly defeats the taxpayers’ right to recover, other portions of the act, not subject to the constitutional infirmity imposed by § 95, authorize Jefferson County at this time to collect additional occupational taxes. We are left with the continued validity of the escrow fund and the simultaneous levy of a new tax. This anomaly is dictated by the terms of Act No. 2009-811.
Our authority to give effect to the retroactive feature of § 7 and the provision for repeal in § 9 of Act No. 2009-811, notwithstanding the constitutional infirmity of the offending portion of § 7, is recognized in § 10 of Act No. 2009-811 and in settled precedent. Nevertheless, this Court may sever any provision of Act No. 2009-811 it finds unconstitutional rather than declaring the entire act unconstitutional.
“If a portion of a legislative enactment is determined to be unconstitutional but the remainder is found to be enforceable without it, a court may strike the offending portion and leave the remainder intact and in force. Courts will strive to uphold acts of the legislature. The inclusion of a severability clause is a clear statement of legislative intent to that effect, but the absence of such a clause does not necessarily indicate the lack of such an intent or require a holding of inseverability.”
City of Birmingham v. Smith, 507 So.2d 1312, 1315 (Ala.1987). We therefore strike that portion of § 7 of Act No. 2009-811 ratifying, validating, and confirming the illegal collection of taxes as inconsistent with the restraint on legislative authority set forth in § 95, but we leave the remainder of Act No. 2009-811 intact and in force. The escrow fund into which Jefferson County placed the illegally collected taxes remains intact for distribution as ordered by the trial court, subject to the modifications hereinafter discussed. However, as is called for by the remainder of Act No. 2009-811, Jefferson County is not barred from collecting the retroactive tax authorized by Act No. 2009-811.

C. Matters Applicable to the Escrow Fund Before the Trial Court

Because the conclusion that the trial court erred in declaring the retroactive tax authorized by Act No. 2009-811 unconstitutional does not eliminate the escrow fund, nor does it necessitate vacatur of the *694 order transferring the escrow fund to a special master charged with administering the fund,[5] we must reach the additional issues raised by the County dealing with those aspects of the order compelling the transfer of the escrowed funds as it relates to computation of the amount included in the fund and the accrual of interest pursuant to § 8-8-10, Ala.Code 1975.

1. Amount Included in the Escrow Fund

The trial court’s order of December 23, 2009, resolved a dispute between the parties as to the amount Jefferson County had collected in taxes between January 12 and August 14, 2009. The County calculated the total amount collects ed during that period, with interest, as $37,796,802.06; the taxpayers calculated the total amount collected during that period as $47,812,627.95. The trial court adopted the taxpayers’ method of calculation and ordered the County to pay the additional $10,016,325.89 to the special master within 15 days of its order. The County complied with that order.
The County argues that the amount of the escrow fund should include only those taxes Jefferson County levied between January 12, the date of the trial court’s injunction, and August 14, the effective date of Act No. 2009-811. The County contends that the trial court used an irrational methodology for calculating the amount collected, but it also contends that even under the trial court’s methodology, the court miscalculated the amount of the refund and required the County to pay more than $10 million too much. The taxpayers argue that the total proceeds of Jefferson County’s occupational taxing activities after the trial court’s order of January 12 and before any new tax was authorized by the legislature should be included in the escrow fund. It is factually undisputed, the taxpayers say, that Jefferson County collected a total of $47,812,627.95 in occupational taxes and business-license fees attributed to the injunction ordering the moneys to be deposited to the escrow fund.
It is unnecessary for this Court to decide whether the trial court erred in using the methodology argued by the taxpayers rather than the methodology argued by the County because we agree with the County that under either method, the trial court erred in including approximately $10 million in the escrow fund. According to the trial court’s order of January 12, which has become the law of the case, Jefferson County had the authority to levy an occupational tax before January 12 and after August 13. Under the “when received” approach as used by the trial court, the taxes paid after January 12 as a result of a valid levy and taxes paid after August 13 as a result of an invalid levy are both refunded. Requiring a refund of approximately $10 million in taxes levied before January 12, 2009, and received thereafter, while also requiring a refund of approximately $10 million in taxes levied before August 13, 2009, and received thereafter is inconsistent and allows the taxpayers a double recovery. If the tax was legal when levied, then those tax receipts received after January 12 but levied before that date should not be included in the escrow fund. By the same token, however, those taxes levied before August 13, 2009, but received thereafter should be included in the escrow fund.

2. Interest Pursuant to § 8-8-10, Ala.Code 1975

The trial court’s December 23 order also required the County to pay post- *695 judgment interest of 12% on the tax receipts it had included in the escrow fund. The County argues that postjudgment interest cannot accrue until the trial court issues a final judgment for a fixed amount of money damages. No final judgment was entered in this case, the County says, until the trial court entered the December 23 order, at which time the County satisfied the judgment. The taxpayers argue that the occupational-tax receipts deposited into the escrow fund from January 12, 2009, until August 13, 2009, should bear interest at the rate of 12%, and, therefore, that the trial court properly required the County to pay interest on the amount in the escrow fund.
Section 8-8-10, Ala.Code 1975, provides:
“Judgments for the payment of money, other than costs, based upon a contract action, bear interest from the day of the cause of action, at the same rate of interest as stated in said contract; all other judgments shall bear interest at the rate of 12% per annum, the provisions of § 8-8-1 notwithstanding, provided that fees allowed a trustee, executor, administrator, or attorney, and taxed as part of the cost of the proceeding, shall bear interest at a like rate from the day of entry.”
The trial court held in its December 23 order that the “amount owed by the County to the taxpayers became fixed in an amount no less than the amount reported each month.” Then, in its order of January 15, 2010, the trial court stated:
“This Court has determined that the amount of the taxes on which post-judgment interest has accrued, and the dates from which such interest has accrued thereon, should be calculated according to the amounts and dates of the County’s certifications filed with the Court or provided to the [taxpayers’] attorneys pursuant to the Order of March 20, 2009. It is the County’s certifications which ‘fix’ the amount(s) on which postjudgment interest has accrued.
[[Image here]]
“In the Order of December 23, 2009, this Court found that the County un-derreported by $10,016,325.89 the amount received between January 12, 2009, and August 14, 2009. Accordingly, the Order of December 23, 2009, fixed the corpus of the Settlement Fund at $47,812,627.95. Postjudgment interest is, therefore, deemed to hereafter accrue on the corpus of the said Fund at the rate of $15,719.22 per day.”
“Section 8-8-10 applies only when the judgment is one for the payment of money, i.e., a ‘money judgment.’ ” Alabama Dep’t of Conservation & Natural Res. v. Exxon Mobil Corp., 11 So.3d 194, 203 (Ala.2008). This Court has defined a final judgment as follows:
“ ‘A final judgment is a terminative decision by a court of competent jurisdiction which demonstrates there has been complete adjudication of all matters in controversy between the litigants within the cognizance of that court. That is, it must be conclusive and certain in itself, (citations omitted) All matters should be decided; damages should be assessed with specificity leaving the parties with nothing to determine on their own. A judgment for damages to be final must, therefore, be for a sum certain determinable without resort to extraneous facts (citations omitted).’ ”
Moody v. State ex rel. Payne, 351 So.2d 547, 551 (Ala.1977) (quoting Jewell v. Jackson & Whitsitt Cotton Co., 331 So.2d 623, 625 (Ala.1976)).
The order of January 12, 2009, clearly was not a final judgment. That order was not a “money judgment”; instead, it held *696 that Act No. 99-669 had repealed the 1967 Act, and it entered an injunction requiring the County to place the occupational taxes collected in an escrow fund. The taxpayers described the order as an injunction in their response to the County’s second motion for an emergency stay in Jefferson County I:
“Upon [the taxpayers’] Motion for Summary Judgment, the trial court ruled, on January 12, that the Alabama Legislature validly repealed the [County’s] authority to impose and collect the subject occupational and business license taxes. Even though the trial court had clearly ruled that the [County’s] taxing authority had been lawfully repealed by the Legislature, the trial couri entered an interlocutory injunction to maintain the status quo during appeal allowing [the County] to impose and collect occupational and business licenses taxes in Jefferson County, so long as the collected funds are deposited into a secure escrow account.”
Taxpayers’ response, p. 2 (emphasis added). The taxpayers continued to describe the January 12, 2009, order as an injunction in their appellees’ brief in this appeal:
“Here, the trial court was faced with a declaratory judgment action, filed pursuant to A.R. Civ. P. Rule 57. In response, the trial court declared that the County’s authority to exact an occupational tax had been validly repealed by Act 99-669. In an abundance of caution, the trial court issued an injunction, in accord with A.R. Civ. P. Rule 65, allowing the County to collect the subject taxes during the pendency of the anticipated appeal and, thus, protect the Taxpayers’ common law count for money had and received.... The trial court declared that the monies collected pursuant to its Rule 65 injunction were the property of the Taxpayers.”
Taxpayers’ brief at 34-35 (emphasis added).
The fact that the amount owed by the County to the escrow fund became fixed each month does not transform the injunction into a final judgment. This Court rejected that reasoning in Exxon, in which the trial court had issued a declaratory judgment ordering Exxon to pay the State royalties beginning in December 2003 “ ‘according to the plain, unambiguous language of the leases’ ” between the State and Exxon. 11 So.3d at 198. After Exxon paid the royalties in 2008, the State requested postjudgment interest on the amount of the royalties. In explaining why the 2003 declaratory judgment “did not constitute a money judgment for purposes of § 8-8-10,” this Court stated that the judgment did not “adjudicate or fix an amount of future royalties owed the State by Exxon. Rather, the judgment simply informed Exxon that it was to compute future royalties according to the leases as interpreted by the jury.” 11 So.3d at 203. The Court rejected the State’s argument that the declaratory judgment had “incor-porat[ed] into that judgment each monthly royalty payment as it came due,” thus fixing the State’s right to those payments. 11 So.3d at 202. The trial court erred in awarding postjudgment interest on the monthly deposits the County made to the escrow fund.
The trial court also erred in requiring the County to pay postjudgment interest during the pendency of this appeal after it satisfied the judgment of December 23. We agree with the reasoning of the Court of Civil Appeals that the disposi-tive issue for determining whether a defendant has satisfied a judgment is “not whether [the defendant] ... continued to prosecute its appeal beyond the date of the purported satisfaction ...; rather, it is whether moneys owed by [the defendant] *697 to [the plaintiff] under the judgment were made available to [the plaintiff] without any restriction or condition not found in the judgment itself.” Birmingham Pain Ctr., Inc. v. Cosgrove, 896 So.2d 538, 545 (Ala.Civ.App.2004). The County paid into the escrow fund established by the January 12 injunction the amount the trial court ordered it to pay. “The payment of money into the court is a proper means of satisfying a judgment.” Elmore County Comm’n v. Ragona, 561 So.2d 1092, 1098 (Ala.1990).

III. Conclusion

We reverse that aspect of the December 23, 2009, judgment in which the trial court declared the retroactivity of tax collection pursuant to Act No. 2009-811 to be unconstitutional, but, because we strike that portion of Section 7 of Act No. 2009-811 ratifying, validating, and confirming the collection of the illegal tax, we affirm that aspect of the judgment in which the trial court ordered the transfer of the escrowed funds to a special master. We reverse the January 15, 2010, order in which the trial court ordered the County to pay post-judgment interest. In further proceedings on remand, consistent with the determination that Act No. 2009-811 is not unconstitutional, the trial court, whether or not it uses the services of a master to assist it in the distribution of the escrowed funds, shall compute the County’s liability exclusive of taxes collected after January 12, 2009, but levied prior thereto, and without the obligation to pay interest pursuant to § 8-8-10, Ala.Code 1975.
1090437 — AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
1090517 — REVERSED AND REMANDED.
COBB, C.J., and STUART, SMITH, and SHAW, JJ., concur.
PARKER, J., concurs in the result.
WOODALL, BOLIN, and MURDOCK, JJ., recuse themselves.

. Collins is a county commissioner for Jefferson County and the president of the Jefferson County Commission, Hulsey is the director of revenue of Jefferson County and the acting director of finance, and Smallwood is the tax collector for Jefferson County.

. See Birmingham-Jefferson Civic Ctr. Auth. v. City of Birmingham, 912 So.2d 204 (Ala.2005), holding that pursuant to the separation-of-powers doctrine set forth in § 43 of the Alabama Constitution of 1901, the judicial branch of government does not have jurisdiction to interpret the rules and procedures of the legislative branch and that, because the Alabama Constitution grants the legislature the power to establish the rules of its proceedings, the determination whether a bill is passed with a sufficient number of votes according to those rules is a nonjusticiable political question.

. The December 23, 2009, order was appeal-able under Rule 4(a)(1)(A), Ala. R.App. P., because it was an interlocutory order denying the County’s motion to dissolve an injunction and entering an injunction against the County-

. Whether such assertion would constitute a statement of a claim upon which relief could be granted is a question not before us; we merely note the absence of any such claim in the taxpayers’ complaint in this proceeding.

. Whether the further services of a master are required on remand is a matter we leave to the sound discretion of the trial court.