Rel: May 12, 2023

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2022-2023

———————————————

## CL-2022-0701

———————————————

### Alabama Department of Revenue

**v.**

### Cellular Express, Inc.

### Appeal from Jefferson Circuit Court
### (CV-21-900658)

PER CURIAM.

The Alabama Department of Revenue ("the Department") appeals

from a judgment entered by the Jefferson Circuit Court ("the trial court")

entered in an appeal from a decision of the Alabama Tax Tribunal ("the

Tax Tribunal").[1] The Tax Tribunal had determined that Cellular Express, Inc. ("Cellular"), owed sales taxes on funds it had received from customers of Boost Mobile ("Boost") as prepayments for Boost's wireless service. The trial court determined that Cellular did not owe sales taxes on those funds. We affirm the trial court's judgment.

Background

From April 2009 through March 2012, the period pertinent to this appeal, Cellular was an authorized dealer for Boost, a provider of prepaid wireless service, and operated three stores in the Birmingham area. Cellular sold cellular telephones, sold cellular-telephone accessories, and offered several different Boost prepaid wireless-service plans. To obtain Boost's wireless service pursuant to one of those plans, a customer had to prepay for the wireless service in thirty-day increments. Boost required Cellular to accept prepayments for the plans from Boost's customers. To

---

[1]In 2014, the legislature created the Tax Tribunal to adjudicate disputes between taxpayers and the Department that had formerly been adjudicated by the Department's Administrative Law Division. See § 40-2B-1, Ala. Code 1975. Section 40-2B-2(a), Ala. Code 1975, designates the Tax Tribunal as an "independent agency" that is "within the executive branch of government." Section 40-2B-2(m), Ala. Code 1975, provides that appeals from decisions of the Tax Tribunal lie in the appropriate circuit court.

facilitate the customers' prepayments for the plans, Cellular's stores housed kiosks where customers could make prepayments for their Boost wireless-service plans on computer terminals. Boost provided the hardware and software for the computer terminals in the kiosks and required Cellular to grant Boost access to Cellular's bank account. After a customer prepaid for his or her wireless-service plan on one of the computer terminals in the kiosks, the payment went to Cellular's bank account, Boost electronically added thirty days to the customer's wireless-service plans without any involvement by Cellular, and the computer terminal in the kiosk provided the customer with a paper receipt bearing a transaction number. Suhail Assad, Cellular's principal shareholder, testified that the purpose of the transaction number was to enable Boost to trace the transaction in case a customer contacted Boost regarding a problem with the transaction or the wireless service. Assad testified that Cellular did not provide the customer with a physical telephone card or a pin number. After a prepayment a Boost's wireless service went into Cellular's bank account, Boost withdrew the prepayment, minus Cellular's five-percent commission.

Cellular's sales-tax returns from April 2009 through March 2012 reported its receipts from the sale of cellular telephones, its receipts from the sale of cellular-telephone accessories, and the amounts that customers had prepaid for Boost's wireless service using the computer terminals in the kiosks in Cellular's stores. The returns showed a deduction equal to the total amount of the prepayments made by customers for Boost's wireless service during that period and showed Cellular's payment of sales taxes on the total receipts from the sale of cellular telephones and accessories during that period.

Section 40-23-2(1), Ala. Code 1975, levies a sales tax on those persons or entities who are engaged in selling at retail any tangible personal property in Alabama. In 1997, the legislature enacted Act No. 97-867, Ala. Acts 1997 ("the 1997 Act"), which added paragraph (13) to § 40-23-1(a). That paragraph provided: "PREPAID TELEPHONE CALLING CARD. A sale of a prepaid telephone calling card or a prepaid authorization number, or both, shall be deemed the sale of tangible personal property subject to the tax imposed on the sale of tangible personal property pursuant to this chapter." William Jamar, Jr., the Department's district coordinator for Jefferson and Shelby Counties,

conceded at the trial in the trial court that prepaid wireless service of the kind provided by Boost from April 2009 through March 2012 did not exist in 1997 when the legislature enacted the 1997 Act.

In 2012, the Department audited Cellular's sales-tax returns from April 2009 through March 2012. In conducting its audit, the Department took the position that, pursuant to § 40-23-1(a)(13), Cellular was liable for sales taxes on prepayments for Boost's wireless service made on computer terminals in the kiosks in Cellular's stores and assessed Cellular $363,416.16 in state sales tax and $181,654.98 in local sales tax.

Cellular timely appealed to the Tax Tribunal. The Department asked the Tax Tribunal to hold Cellular's appeal in abeyance pending the resolution of a similar case involving Beauty & More, LLC, in the Montgomery Circuit Court, and the Tax Tribunal did so.[2] Subsequently, however, the legislature amended § 40-23-1(a) in Act No. 2014-336, Ala. Acts 2014 ("the 2014 Act"). The 2014 Act added a new final sentence to

---

[2]In the case involving Beauty & More, LLC, the Tax Tribunal had held that, when the legislature enacted the 1997 Act, prepaid wireless service, as opposed to prepaid calling cards and authorization numbers, was not available in Alabama and that, therefore, the legislature had not intended to tax prepaid wireless service when it enacted the 1997 Act. The Department appealed from that decision to the Montgomery Circuit Court; however, in October 2014, the Department dismissed that appeal.

paragraph (13) of § 40-23-1(a). That new final sentence stated: "For purposes of this subdivision (13), the sale of prepaid wireless service that is evidenced by a physical card constitutes the sale of a prepaid telephone calling card, and the sale of prepaid wireless service that is not evidenced by a physical card constitutes the sale of a prepaid authorization number." The 2014 Act also added a new paragraph (14) to § 40-23-1(a), which provided:

> "(14) PREPAID WIRELESS SERVICE. The right to use mobile telecommunications service, which must be paid for in advance and that is sold in predetermined units or dollars of which the number declines with use in a known amount, and which may include rights to use non-telecommunications services or to download digital products or digital content. For purposes of this subdivision (14), 'mobile telecommunications service' has the meaning ascribed by Section 40-21-120 [, Ala. Code 1975]."

In addition, the 2014 Act contained the following provision:

> "Section 6. For transactions that occurred prior to the effective date of this act in which the consumer did not receive from the retailer either an authorization number or a physical card, neither the Department of Revenue nor local tax officials may seek payment for sales tax not collected. This limitation on the authority of the department or local officials shall not apply to audits that began or assessments that were entered prior to the effective date of this act. With regard to such transactions in which sales tax was collected and remitted, neither the taxpayer nor the entity remitting sales tax shall have the right to seek refund of such tax."

(Emphasis added.)

After the legislature enacted the 2014 Act, the Department amended its answer in the Tax Tribunal to assert that the 2014 Act resolved the dispute between the Department and Cellular in the Department's favor and that, therefore, there was no reason to hold Cellular's appeal in abeyance pending the resolution of the Department's appeal in the case involving Beauty & More, LLC.

In response to the legislature's enactment of the 2014 Act, Cellular asserted that the 2014 Act was unconstitutional because, Cellular said, it violated Cellular's right to due process. The Tax Tribunal then held Cellular's appeal in abeyance while two other cases, one involving Atheer Wireless, LLC ("Atheer"), and the other involving Patrick Lee Downing, were adjudicated. After this court had adjudicated those cases in Atheer Wireless, LLC v. State Department of Revenue, 228 So. 3d 464 (Ala. Civ. App. 2017), and Alabama Department of Revenue v. Downing, 272 So. 3d 184 (Ala. Civ. App. 2018), respectively, the Tax Tribunal held a hearing in 2019. On January 21, 2021, the Tax Tribunal issued a final order in which it held that the 2014 Act made Cellular liable for sales taxes on the prepayments for Boost's wireless service that Cellular had received,

that the Tax Tribunal did not have jurisdiction to consider Cellular's constitutional challenge to the 2014 Act, and that the constitutional challenge was preserved for appeal to the trial court. Cellular timely appealed to the trial court.

The trial court held a trial de novo on March 8, 2022.[3] On April 27, 2022, the trial court entered a judgment determining that the prepayments for Boost's wireless service that Cellular had received from April 2009 through March 2012 were not subject to sales taxes pursuant to § 40-23-1(a)(13) as it existed before the enactment of the 2014 Act. In its judgment, the trial court found "that cell phones and/or wireless services were not generally available to consumers in Alabama in 1997" and, therefore, determined that the 1997 Act "clearly covered only instances where an Alabama consumer purchased a prepaid long distance telephone calling card and/or a pin number to use with land line

---

[3]In pertinent part, § 40-2B-2(m)(4), Ala. Code 1975, provides:

"The appeal to circuit court from a final or other appealable order issued by the Alabama Tax Tribunal shall be a trial de novo, except that the order shall be presumed prima facie correct and the burden shall be on the appealing party to prove otherwise. The circuit court shall hear the case by its own rules and shall decide all questions of fact and law."

8

telephones." The trial court specifically found that Cellular's receipt of prepayments for Boost's wireless service did not constitute the sale of prepaid authorization numbers under the 1997 Act. The trial court further determined that Section 6 of the 2014 Act was unconstitutional as applied to Cellular insofar as it made the 2014 Act applicable retroactively to taxpayers as to whom the Department had begun a sales-tax audit or had entered a sales-tax assessment before the effective date of the 2014 Act but provided that the 2014 Act was not applicable retroactively to other taxpayers. Accordingly, the trial court determined that the prepayments for Boost's wireless service that Cellular had received from April 2009 through March 2012 were not subject to sales taxes pursuant to the 2014 Act. The Department timely appealed to this court.

<u>Appellate Jurisdiction</u>

Because the Department's decision to assess sales taxes against Cellular prompted the chain of appeals that now brings the Department's appeal to this court, this court has jurisdiction over the Department's appeal pursuant to § 12-3-10, Ala. Code 1975, which, among other things, provides that this court has exclusive appellate jurisdiction over all

appeals from administrative agencies other than the Alabama Public Service Commission.

## Analysis

The Department first argues that § 40-23-1(a)(13), as it existed after the enactment of the 1997 Act and before the enactment of the 2014 Act, made Cellular liable for sales taxes on the prepayments for Boost's wireless service that it received from April 2009 through March 2012. Specifically, the Department asserts that the prepayments for wireless service that Cellular received from April 2009 through March 2012 constituted the sale of a "prepaid authorization number" under § 40-23-1(a)(13) as it existed after the enactment of the 1997 Act and before the enactment of the 2014 Act. We disagree.

The legislature did not define the phrase "prepaid authorization number" in the 1997 Act. Moreover, during the period pertinent to this appeal, the Department did not adopt rule defining that phrase. Consequently, the issue whether Cellular's receipt of a prepayment for Boost's wireless service constituted the sale of a "prepaid authorization number" under the 1997 Act depends on the construction of the legislature's language in that act. "Words used in a statute must be given

their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says." IMED Corp. v. Systems Eng'g Assocs. Corp., 602 So. 2d 344, 346 (Ala. 1992). The undisputed evidence indicated that Cellular did not issue either a physical calling card or an authorization number that had to be entered before a customer could access Boost's wireless service. The transaction number printed on a paper receipt evidencing the transaction when a Boost customer prepaid for wireless service was not a "prepaid authorization number" because the customer did not have to use it to access Boost's wireless service. Moreover, the Department has not explained how anything issued by Cellular could constitute either a physical calling card or an authorization number. Based on the plain language of the 1997 Act, we conclude that Cellular's receipt of a prepayment for Boost's wireless service did not constitute "[a] sale of a prepaid telephone calling card or a prepaid authorization number, or both," under the 1997 Act because Cellular did not issue either a physical prepaid calling card or a prepaid authorization number. Therefore, we find no merit in the Department's first argument.

11

The Department next argues that this court held in <u>Atheer</u> and <u>Downing</u> that sales of prepaid wireless service were subject to sales taxes pursuant to § 43-23-1(a)(13) as it existed after the enactment of the 1997 Act and before the enactment of the 2014 Act. Again, we disagree.

In <u>Atheer</u>, the Department had assessed sales taxes against Atheer for its sale of prepaid wireless service from September 2009 through August 2012. Atheer appealed to the Tax Tribunal. While Atheer's appeal was pending in the Tax Tribunal, the legislature enacted the 2014 Act. The Department amended its answer to Atheer's appeal in the Tax Tribunal to assert that the 2014 Act clarified § 40-23-1(a) by indicating that sales of prepaid wireless service were subject to sales taxes. In response, Atheer asserted that the 2014 Act was unconstitutional. After a hearing, the Tax Tribunal entered an order finding that "'[the] Department [had] correctly assessed [Atheer] pursuant to § 40-23-1(a)(13), as amended by [the 2014 Act].'" 228 So. 3d at 466. Atheer appealed to the Montgomery Circuit Court and again asserted that the 2014 Act was unconstitutional. Atheer and the Department both filed motions for a summary judgment. In its motion, the Department asserted that the Montgomery Circuit Court did not have jurisdiction to consider

Atheer's appeal because, the Department said, Atheer had not served the attorney general with notice of the appeal challenging the constitutionality of the 2014 Act. The Department's motion also asserted that the 2014 Act was constitutional. The Montgomery Circuit Court held a hearing and denied Atheer's motion but did not rule on the Department's motion. The Department then filed a second motion for a summary judgment in which it reiterated more throughly its argument that the 2014 Act was constitutional. Thereafter, the Montgomery Circuit Court entered a summary judgment in favor of the Department without specifying its reasons for doing so.

Atheer then appealed to this court. This court affirmed the judgment of the Montgomery Circuit Court, and Atheer applied for a rehearing. In its application for a rehearing, Atheer asserted for the first time that it had served the attorney general with notice of its appeal challenging the constitutionality of the 2014 Act by serving a copy of its appeal on the assistant attorneys general representing the Department. This court granted Atheer's application for a rehearing but held that it could not consider Atheer's argument that it had served the attorney general with notice of its constitutional challenge by serving the assistant

13

attorneys general because of the well-settled legal principle that an appellate court cannot consider an argument raised for the first time in an application for a rehearing. This court affirmed the summary judgment in favor of the Department by applying the following principle of law:

> "When a trial court enters a summary judgment without specifying the bases for its ruling, the appellant must set forth an argument in its principal brief as to the invalidity of each and every ground asserted in the motion, or motions, for a summary judgment; if not, the appellant waives any argument as to the omitted ground, resulting in the automatic affirmance of the summary judgment."

228 So. 3d at 468. This court automatically affirmed the summary judgment in favor of the Department because (1) the Montgomery Circuit Court had entered the summary judgment without specifying the bases for its ruling; (2) the Department had asserted as one of the grounds of its summary-judgment motion that Atheer could not challenge the constitutionality of the 2014 Act because, the Department said, Atheer had not served the attorney general with notice of that challenge; and (3) Atheer had not asserted in its principal brief an argument that that ground of the Department's motion was invalid. This court did not hold that § 40-23-1(a)(13) as it existed after the enactment of the 1997 Act and

14

before the enactment of the 2014 Act subjected prepayments for wireless service to sales taxes. Moreover, we did not address the merits of Atheer's argument that the 2014 Act was unconstitutional.

In <u>Downing</u>, the Department "appeal[ed] from a judgment of the Elmore Circuit Court … finding that <u>sales of prepaid authorization numbers</u> for wireless services on cellular telephones were not subject to the sales tax at the time the sales were made [between September 1, 2008, and June 30, 2011,] and ordering the Department to refund the amount of taxes paid." 272 So. 3d at 186 (emphasis added). In <u>Downing</u>, this court stated: "Patrick Lee Downing was the sole member of Downing Enterprises, LLC ('the LLC'), a business that sold, among other products, <u>prepaid authorization numbers allowing access</u> to wireless services on cellular telephones." <u>Id.</u> (emphasis added). This court also stated: "Downing testified that the LLC sold <u>prepaid authorization numbers</u> for wireless services on cellular telephones." 272 So. 3d at 193 (emphasis added). In <u>Downing</u>, the Elmore Circuit Court's judgment "found that <u>the sales of prepaid authorization numbers</u> were not subject to the sales tax at the time that those sales were made." 272 So. 3d at 187 (emphasis added). This court disagreed, and, in reversing the Elmore Circuit Court's

judgment, held that "the LLC's sales of <u>prepaid authorization numbers</u> were subject to taxation pursuant to § 40-23-1(a)(13), as that provision existed at the time the applicable sales occurred." 272 So. 3d at 193 (emphasis added).

<u>Downing</u> is distinguishable from the present case because the record in the present case contains no evidence indicating that Cellular sold "prepaid authorization numbers allowing access" to wireless service. 272 So. 3d at 186. To the contrary, the undisputed evidence indicates that Cellular did not issue a prepaid authorization number allowing access to Boost's wireless service when Boost's customers prepaid for Boost's wireless service. <u>Downing</u> did not hold that sales of prepaid wireless service were ipso facto subject to § 40-23-1(a)(13) as it existed after the enactment of the 1997 Act and before the enactment of the 2014 Act. It held only that sales of prepaid authorization numbers allowing access to wireless service on cellular telephones were subject to sales taxes under that version of § 40-23-1(a)(13).

Accordingly, we find no merit in the Department's argument that this court held in <u>Atheer</u> and <u>Downing</u> that sales of prepaid wireless service were subject to sales taxes pursuant to § 43-23-1(a)(13) as it

16

existed after the enactment of the 1997 Act and before the enactment of the 2014 Act.

The Department next argues that the trial court erred in determining that Section 6 of the 2014 Act was unconstitutional insofar as it made the 2014 Act applicable retroactively to Cellular. We disagree.

Section 6 of the 2014 Act provided that the 2014 Act would not apply retroactively to any transactions in which the consumer did not receive from the retailer either an authorization number or a physical card if the Department had not collected sales taxes as a result of those transactions; however, it exempted from this limitation on retroactive application taxpayers as to whom the Department had begun sales-tax audits or had entered sales-tax assessments before the 2014 Act became effective. Thus, Section 6 exempted some taxpayers from the retroactive application of the 2014 Act while subjecting others, such as Cellular, to its retroactive application because the Department had begun a sales-tax audit or had entered a sales-tax assessment as to them before the effective date of the 2014 Act.

> "'When a court is called on to consider whether retroactive legislation is constitutional, its focus is on whether the retroactivity of the legislation denies due process. [Monroe v. Valhalla Cemetery Co., 749 So. 2d 470, 473-74 (Ala. Civ. App.

17

1999), overruled on other grounds, <u>Patterson v. Gladwin Corp.</u>, 835 So. 2d 137, 153 (Ala. 2002)] (quoting <u>United States v. Carlton</u>, 512 U.S. 26, 30-31, 114 S. Ct. 2018, 129 L. Ed. 2d 22 (1994)). In <u>Carlton</u>, "the [United States Supreme] Court set forth the test to determine whether retroactive tax legislation denies due process: first, the legislation must be 'supported by a legislative purpose furthered by rational means,' and second, the period of retroactivity must be 'modest.'" <u>Valhalla Cemetery Co.</u>, 749 So. 2d at 474 (quoting <u>Carlton</u>, 512 U.S. at 31, 114 S. Ct. 2018).'"

<u>Jefferson Cnty. Comm'n v. Edwards</u>, 49 So. 3d 685, 691 (Ala. 2010) (quoting <u>IEC Arab Alabama, Inc. v. City of Arab</u>, 7 So. 3d 370, 374 (Ala. Civ. App. 2008)).

In its judgment, the trial court explained its rationale for concluding that Section 6 of the 2014 Act was unconstitutional as applied to Cellular:

"Walking this case through the two-part test set forth in [United States v.] <u>Carlton</u>, [512 U.S. 26 (1994),] the Court finds:

"(1) that the retroactive aspects of the 2014 [Act] as applied to Cellular Express are not 'supported by a legislative purpose furthered by rational means,' because the law singles out only those few taxpayers who had audits that began or assessments that were entered prior to the effective date of the [2014 Act].

"(2) by reaching five years back in time -- from the 2014 enactment of the [2014 Act] to [Cellular's] 2009 tax year -- the retroactivity period of [the 2014 Act] is not 'modest.'

18

"After completing its <u>Carlton</u> analysis, this Court finds and holds that the following portion of Section 6 of [the 2014 Act] is unconstitutional as applied to Cellular Express under the particular facts of this case:

> "'This limitation on the authority of the department or local officials shall not apply to audits that began or assessments that were entered prior to the effective date of this act.'

"The Court has ruled in this way because, by legislatively deciding Cellular Express's tax appeal in favor of the Department of Revenue in 2014 regarding tax years reaching as far back as 2009, the State of Alabama violated Cellular Express's right to due process. More specifically, the Court finds and holds that the State violated Cellular Express's due process rights by arbitrarily subjecting it (and the few others who had tax appeals pending on this issue when the 2014 [Act] was passed) to taxes that others were not retroactively required to pay. <u>See</u> <u>Carlton</u>, 512 U.S. at 30 (noting the Constitutional prohibition on 'arbitrary and irrational legislation').

"For the above-outlined reasons, this Court disallows the retroactive application of this sales tax to this particular taxpayer under these particular circumstances. Nothing in this ruling affects any other aspect of [the 2014 Act]. Rather, in all other respects as to all other taxpayers, the [2014] Act remains in full force and effect."

The Department argues that the trial court erroneously determined that Section 6 of the 2014 Act was unconstitutional as applied to Cellular. This is so, according to the Department, because, it says, (1) the legislative purpose of the 2014 Act was to clarify § 40-23-1(a) rather than

to create a new tax, (2) the clarification of § 40-23-1(a) by means of the 2014 Act was rational, and (3) the retroactive period of five years was modest. However, it was not the clarification of § 40-23-1(a) that the trial court determined was not supported by a legislative purpose furthered by rational means; it was Section 6's retroactive application of the 2014 Act to a small number of taxpayers that included Cellular while exempting other taxpayers from the retroactive application of the 2014 Act that the trial court determined was not supported by a legislative purpose furthered by rational means. The Department has not persuasively argued that subjecting a small number of taxpayers as to whom the Department had begun sales-tax audits or had entered sales-tax assessments before the effective date of the 2014 Act, while exempting other taxpayers who would owe sales taxes if the 2014 Act were applied retroactively to them, is a rational means of clarifying § 40-23-1(a). Therefore, we will not reverse the trial court's judgment insofar as it determined that Section 6 of the 2014 Act was unconstitutional as applied to Cellular.

Citing this court's decision in IEC Arab Alabama, Inc. v. City of Arab, 7 So. 3d 370 (Ala. Civ. App. 2008), the Department also argues that

the five-year retroactivity period of the 2014 Act applicable to Cellular is modest and, therefore, does not violate Cellular's due-process rights. However, because the Department has failed to persuasively argue that applying the 2014 Act retroactively to Cellular because the Department had entered an assessment against it before the effective date of the 2014 Act, while exempting other taxpayers who would owe sales taxes if the 2014 Act were applied retroactively to them, is a rational means of clarifying § 40-23-1(a), we need not reach the issue whether the five-year retroactivity period is modest.

Accordingly, for the reasons discussed above, we affirm the judgment of the trial court.

AFFIRMED.

Thompson, P.J., and Moore, Hanson, and Fridy, JJ., concur.

Edwards, J., recuses herself.